**In re LIBBY INTERNATIONAL, INC., Libby Holdings, Inc., Debtors.**

**Mark G. Stingley, Chapter 11 Trustee, Plaintiff,**

**v.**

**AlliedSignal, Inc., Defendant.**

Bankruptcy Nos. 98–43826, 98–43828. Adversary No. 99–4208–1.

United States Bankruptcy Court, W.D. Missouri, Western Division.

Oct. 21, 1999.

---

6. 11 U.S.C. § 544.

Samuel S. Ory, Bryan Cave LLP, Kansas City, MO, for trustee.

Scott J. Goldstein, Betsy Morgan Garvin, Tiffany A. Earl, Spencer Fane Britt & Browne LLP, Kansas City, MO, for defendant.

## MEMORANDUM OPINION AND ORDER

JERRY VENTERS, Bankruptcy Judge.

On May 6, 1999, the Chapter 11 Trustee, Mark G. Stingley, filed an adversary proceeding against AlliedSignal, Inc. ("AlliedSignal" or "Defendant"), seeking the avoidance and recovery of a purported preferential transfer from the Debtor, Libby International, Inc. ("Libby"), to AlliedSignal pursuant to 11 U.S.C. § 547. The matter comes before the Court at this juncture on competing motions for summary judgment.

In addition to the motions for summary judgment and suggestions filed in support thereof, the parties submitted a joint pretrial statement and a statement of stipulated facts. Based on the foregoing, the matter hinges on the single legal issue of whether the earmarking doctrine should be applied to $325,319.45 in transfers made from an escrow account to AlliedSignal within 90 days of the Debtor's bankruptcy filing. If the doctrine applies, the transfers would not be preferential; however, if it does not apply, the transfers would be preferential and therefore subject to avoidance and turnover pursuant to 11 U.S.C. §§ 547(b) and 542(a).

Upon consideration of the parties' submissions and the Court's independent research, the Court finds that the earmarking doctrine does not apply to the transfers in question. Therefore, the transfers will be avoided, and the Court will grant summary judgment for the Trustee,[1] and deny summary judgment for the Defendant, AlliedSignal.

---

1. In the Joint Pretrial Statement, the parties stated that Allied had an additional defense, which was that the $325,319.45 in payments made to Allied were not preferential because Allied held a "perfected and unavoidable" security interest in the Escrow Account.

This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F), and this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334(b).

This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law as required by Rule 7052, Fed.R.Bankr.P. The Stipulation of Facts submitted by the parties is incorporated by reference herein and is attached hereto (without the supporting exhibits) as Attachment A.

## DISCUSSION

Summary judgment is governed by Rule 56, Fed.R.Civ.P., which is made applicable to bankruptcy proceedings by Bankruptcy Rule 7056, Fed.R.Bankr.P. That rule provides, in pertinent part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Rule 56(c), Fed.R.Civ.P.

The submissions of the parties indicate that there is no genuine issue of material fact; therefore, the Court will decide this matter on the basis of the motions for summary judgment and supporting documents.

The determinative question to be decided by the Court is whether the earmarking doctrine applies to the $325,319.45 in transfers made from the Escrow Account to AlliedSignal within the 90–day preference period.

 The earmarking doctrine is a judicially created exception to 11 U.S.C. § 547 that derives from the statutory requirement that a transfer, in order to be

deemed preferential, must be "of an interest of the debtor in property." *Buckley v. Jeld–Wen, Inc. (In re Interior Wood Products Co.)*, 986 F.2d 228, 231 (8th Cir.1993); *Lewis v. Providian Bancorp (In re Getman)*, 218 B.R. 490, 492 (Bankr.W.D.Mo. 1998). In addition to the five elements under § 547 (§ 547(b)(1)–(5)), a trustee must prove that the transfer in question was *not* subject to the earmarking doctrine, i.e., that the debtor *did* have an interest in the property transferred. The doctrine, as it is applied in the Eighth Circuit, has three basic requirements: "(1) the existence of an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt; (2) performance of the agreement according to its terms; and (3) the transaction viewed as a whole (including the transfer of the new funds and the transfer out to the old creditor) does not result in any diminution of the estate." *McCuskey v. National Bank of Waterloo (In re Bohlen Enterprises, Ltd.)*, 859 F.2d 561, 566 (8th Cir.1988). The first requirement has been expanded somewhat beyond this basic formulation to include existing lenders (as opposed to only "new" lenders) and to include transactions in which a debtor grants the "new" lender a security interest (of priority equal to the "old" creditor's) in the debtor's property. *See Kaler v. Community First National Bank (In re Heitkamp)*, 137 F.3d 1087 (8th Cir. 1998) (hereinafter *"Heitkamp"*). However, the basic formulation of "new funds pursuant to an agreement, performance of the agreement, and no net diminution of the estate" remains intact. The Trustee has the burden of proving that the earmarking doctrine does not apply, *In re Ward*, 230 B.R. 115, 119 (8th Cir. BAP 1999). The Court finds that the Trustee has met this burden.

However, Allied appeared to abandon this defense in its Motion for Summary Judgment and in its Suggestions, inasmuch as it was never mentioned in either. This is just as well since, as the Trustee correctly points out,

Allied's security agreement was not "unavoidable," and was, in fact, avoided pursuant to the Stipulation and Order Avoiding AlliedSignal's Security Interest, entered by this Court on January 22, 1999.

■ The Trustee has clearly demonstrated that the earmarking doctrine does not apply to the transfers at issue because two of the three necessary elements of the earmarking doctrine are not present. First, the payments made by the Air Force into the Escrow Account were not new funds, but rather funds that were already owed to Libby pursuant to its contract with the Air Force. Put simply, they were accounts receivable. In a practical sense they might have been "earmarked," inasmuch as AlliedSignal and Libby had an agreement to channel those payments directly (via the Escrow Account) from the Air Force to AlliedSignal. But, because AlliedSignal failed to perfect its security interest in the Escrow Account outside of the preference period, the agreement cannot withstand avoidance as a preference; as an unsecured creditor, receipt of the Air Force's payments would enable AlliedSignal to recover more than it would have in a Chapter 7 liquidation. *See* 11 U.S.C. § 547(5)(A).

Furthermore, the "agreement" between AlliedSignal and Libby does not satisfy the earmarking doctrine's requirement that there be an agreement between the new lender and the debtor that the new funds will be used to pay a specified antecedent debt. The only agreement offered into evidence was an agreement between an *old* creditor, AlliedSignal, and the Debtor. The "agreement" that involved the Debtor and a "new lender" was Libby's request for a modification of the contract with the Air Force to change the remittance address for future payments, and this agreement is a far cry from one to pay an antecedent debt.

Second, there was a net diminution of the estate—The transfers to AlliedSignal reduced the amount of assets that would be available to general unsecured creditors of which AlliedSignal would only be entitled to its pro-rata share, and the application of the earmarking doctrine here would be equivalent to granting AlliedSignal a security interest in Libby's accounts receivable, which was exactly what AlliedSignal tried to obtain but failed.[2]

AlliedSignal has countered with a number of creative, but ultimately unavailing, arguments. First, AlliedSignal argues that the Eighth Circuit's decision in *Heitkamp* expanded the earmarking doctrine to apply to the present situation. This reading greatly overstates the extent *Heitkamp* alters the application of the earmarking doctrine. *Heitkamp* should be read as shifting the focus away from the identity and relationship of the party supplying the new funds and towards the net effect or result of the transfers. *See In re Ward*, 230 B.R. at 118–120 ("*Heitkamp* represents a major change in the application of the doctrine in this circuit. Prior to *Heitkamp*, the doctrine was considered in cases which focused on whether a transfer to an old or previous creditor was preferential. . . .After *Heitkamp*, preference attacks on transfers to new creditors in earmarking situations must be analyzed in terms of this net result rule to determine if there has been a transfer of property of the debtor."); *Forker v. Duenow Management Corp. (In re Calvert)*, 227 B.R. 153, 157 (citing *Heitkamp* for proposition that the earmarking doctrine applies only if the new and old creditor enjoy the same priority). AlliedSignal's manipulation of the language in *Heitkamp*, albeit somewhat ambiguous, is not well taken.

Next, the Defendant argues that this Court should follow the holding in *Herzog v. Sunarhauserman (In re Network 90 Degrees, Inc.)*, 126 B.R. 990 (N.D.Ill.1991) (hereinafter "*Network 90* "). In *Network 90*, the District Court for the Northern District of Illinois held that certain transfers made from customers of the debtor directly to one of the debtor's creditors (by means of checks made payable jointly to the debtor and the creditor) were subject to the earmarking doctrine and therefore not preferences even though they were

---

**2.** *See supra,* n. 1.

made within the preference period. *Id.* Although the facts of *Network 90* are remarkably similar to the instant case, this Court declines to follow the holding of *Network 90* because it is not binding precedent in this jurisdiction, and perhaps more importantly, we do not believe that it is consistent with the earmarking doctrine as enunciated by the Eighth Circuit.[3]

■ The court in *Network 90* rested its holding almost entirely on the fact that the debtor did not have control over the funds. *Id.* at 996 ("[W]hat is crucial to the finding of earmarking in these circumstances is ... the debtor's lack of control over the funds received and forwarded to the existing creditor."). It reasoned that because the debtor did not have control over the funds, the funds never became property of the estate; since they never became part of the estate, the transfer of them to an existing creditor did not diminish the estate; therefore, the transfers were not preferential. We decline to adopt this reasoning for a number of reasons. First, control over the funds is not dispositive, the net effect of the transfer on the estate is. *Heitkamp,* at 1089. Second, even under the "net effect" test, the facts of *Network 90* would not warrant the application of the earmarking doctrine. The court in *Network 90* reasoned, in the same vein as the defendants now argue, that because a supplier of an essential component is paid directly from the proceeds of the debtor's sale of the product, the estate is not diminished. However, this reasoning fails to appreciate that this arrangement is equivalent to giving the supplier a security interest in the accounts receivable, which the supplier did not have in *Network 90* and does not have in the instant case, and it ignores the fact that the price obtained by

the debtor for the sale of its product most likely includes more than just cost of the component supplied. Third, the application of the earmarking doctrine to the payment of a debtor's supplier by a debtor's customers has already been rejected by this Court. *See In re R.M. Taylor, Inc.,* Memorandum Opinion, entered September 30, 1999 (J. Federman) (unpublished).

■ Finally, the Defendant argues that there was no diminution of the estate, but rather, the estate was enhanced by the transaction. If the Court were to ignore the distinctions between secured and unsecured obligations, this argument might have some merit, but that is not the case. While the Court is sympathetic to Defendant's position that it provided the Debtor with 18 engines and expected to be paid directly from the Air Force's payments to the Debtor (by means of the Escrow Account), the Court cannot ignore the fact that AlliedSignal did not properly perfect its security interest in those payments. Payments made from the "collateral" of their purported security interest cannot be anything but preferential when the security interest in the Escrow Account has already been avoided as preferential. In effect, the Defendant is asking the Court to replace the Debtor's unsecured obligation to AlliedSignal with a secured obligation (albeit a security interest in funds originating from a third party), and that cannot be done through use of the earmarking doctrine. *Heitkamp,* at 1089.

For the reasons stated herein, the Court finds that the $325,319.45 transferred from the Escrow Account to AlliedSignal within the 90–day preference period was prefer-

The Court also pauses to note that the decision in *Network 90* was contrary to a number of other bankruptcy court decisions holding that the earmarking doctrine cannot be applied to transfers from an entity owing money to a debtor to a debtor's creditor, *see, e.g., In re Funding Systems Asset Management Corp.,* 111 B.R. 500 (Bankr.W.D.Pa.1990); *In re Buono,* 119 B.R. 498 (Bankr.W.D.Pa.1990).

*See also, Network 90,* at 995 (recognizing that its holding was contrary to other courts' treatment of similar issue). Contrary to the suggestions of the Defendant, *Network 90 has been criticized for taking an over-simplified approach to the earmarking doctrine. See Tolz v. Barnett Bank of South Florida (In re Safe–T–Brake of South Florida, Inc.),* 162 B.R. 359, 365–66 (Bankr.S.D.Fla.1993)

ential pursuant to 11 U.S.C. § 547(b). Accordingly, it is

**ORDERED** that the Trustee's Motion for Summary Judgment be and is hereby GRANTED, and the Trustee / Plaintiff, Mark G. Stingley, is awarded judgment against the Defendant, AlliedSignal, Inc., in the amount of $325,319.45. It is

**FURTHER ORDERED** that Defendant, AlliedSignal, Inc.'s Motion for Summary Judgment be and is hereby DENIED.

**SO ORDERED.**

## ATTACHMENT A

Oct. 8, 1999.

### *STIPULATED FACTS*

1. Libby International, Inc. manufactured portable electric generating equipment, including a generator used by the United States Air Force called a Large Aircraft Start System (the "LASS Generator").

2. In late 1994 Libby entered into a contract with the United States of America, Department of the Air Force (the "Air Force") for the manufacture of LASS Generators to be purchased by the Air Force (the "LASS Contract").

3. AlliedSignal, Inc. ("AlliedSignal") is a manufacturer of, among other things, engines suitable for use in the LASS Generators. Pursuant to that certain Purchase Order P970238, as amended from time to time (the "Purchase Order"), AlliedSignal agreed to supply engines to Libby for incorporation in the LASS Generators Libby was required to build under the LASS Contract.

4. Libby failed to make certain payments due to AlliedSignal under the Purchase Order, and by March 11, 1998 was indebted to AlliedSignal, pursuant to the Purchase Order, in the approximate sum of $8,250,000.

5. On or about March 11, 1998, Libby, Manchester Business Services, Inc. and AlliedSignal entered into that certain Agreement (the "March 11, 1998 Agreement") attached as Exhibit A.

6. In late March or early April 1998, Libby, AlliedSignal and First Trust National Association, n/k/a U.S. Bank (the "Bank") entered into an Escrow Agreement dated effective March 20, 1998, a copy of which is attached as Exhibit B.

7. On or before March 31, 1998, Libby and AlliedSignal opened an account numbered 3364450 (the "Escrow Account") at the Bank titled "Libby Inc., AlliedSignal Escrow." See Bank Statements attached as Exhibit C.

8. In April 1998, Libby and AlliedSignal entered into: (1) that certain Debt Restructure Agreement dated to be effective as of March 20, 1998 attached as Exhibit D; (2) that certain Security Agreement related thereto attached as Exhibit E; and (3) that certain Promissory Note in the sum of $8,091,215.54 attached as Exhibit F.

9. On or about April 23, 1998, the LASS Contract was modified to change the remittance address for payments thereunder to the Escrow Account. See LASS Contract Modifications # 00061A and # 00051B attached as Exhibit G.

10. On or about May 19, 1998, an electronic funds transfer made by the Air Force intended to go to the Escrow Account was rejected as a result of an incorrect account number. See Public Voucher for Refund attached as Exhibit H.

11. On or about May 21, 1998, the LASS Contract was modified to change the remittance address to Libby's business address at 5800 Stilwell, Kansas City, MO 64120, and a check (the "Check") in the amount of $580,415.00 was sent by the Air Force to Libby. See LASS Contract Modification # 00051C attached as Exhibit I.

12. On or about May 21, 1998, Libby and the Bank executed an ACH Vendor/Miscellaneous Payment Enrollment Form directing that payments due from

the Air Force be paid into the Escrow Account by ACH electronic transfer, a copy of which is attached as Exhibit J.

13. On or about May 22, 1998, Libby mailed the Check to the Bank for deposit to the Escrow Account. See letter and copy of enclosed Check attached as Exhibit K.

14. On June 23, 1998, a payment in the sum of $56,577.30 was transferred by ACH electronic transfer from the Air Force into the Escrow Account. See Bank Statements attached as Exhibit C.

15. By letter dated, telefaxed and sent via Federal Express to the Bank on June 29, 1998, AlliedSignal gave notice to the Bank that due to Libby's default under the Debt Restructure Agreement, funds held in or later received in the Escrow Account were to be disbursed solely to AlliedSignal, a copy of which is attached as Exhibit L.

16. On June 30, 1998, a payment in the sum of $169,731.90 was transferred by ACH electronic transfer from the Air Force into the Escrow Account. See Bank Statements attached as Exhibit C.

17. On June 30, 1998, the sum of $56,577.30 was transferred from the Escrow Account to AlliedSignal, the transfer being to AlliedSignal's account at Chase Manhattan Bank of New York. See Bank Statements attached as Exhibit C.

18. On July 1, 1998, the sum of $169,731.90 was transferred from the Escrow Account to AlliedSignal, the transfer being to AlliedSignal's account at Chase Manhattan Bank of New York. See Bank Statements attached as Exhibit C.

19. On July 7, 1998, a payment in the sum of $99,010.25 was transferred by ACH electronic transfer from the Air Force into the Escrow Account. See Bank Statements attached as Exhibit C.

20. On July 8, 1998, the sum of $99,010.25 was transferred from the Escrow Account to AlliedSignal, the transfer being to AlliedSignal's account at Chase Manhattan Bank of New York. See Bank Statements attached as Exhibit C.

21. On September 10, 1998, the date of the filing of Libby's bankruptcy petition, Libby remained indebted to AlliedSignal under the Purchase Order. In its Proof of Claim filed herein on January 15, 1999, AlliedSignal claims that, as of September 10, 1998, Libby owed AlliedSignal $7,855,899.91 under the Note, and an additional amount of $2,406,191.30 under the Purchase Order.