**In re Timothy D. PRINDLE, Debtor.**

**Bruce E. Strauss, Trustee, Plaintiff,**

**v.**

**Chrysler Financial Company, L.L.C., Defendant.**

**Bankruptcy No. 01–50184–JWV.
Adversary No. 01–5013–JWV.**

United States Bankruptcy Court,
W.D. Missouri,
St. Joseph Division.

Dec. 19, 2001.

Bruce E. Strauss, Kansas City, MO, for Plaintiff.

Janet I. Blauvelt, Kansas City, MO, for Defendant.

## MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

The issue before the Court in this Adversary Proceeding is a somewhat unusual one: Whether a secured creditor's acceptance of a motor vehicle as substitute collateral on an earlier note and security agreement, without timely perfection of its lien as required by the Bankruptcy Code and state law, is a voidable preference under 11 U.S.C. § 547(b).

Bruce E. Strauss, the trustee ("Trustee") in the underlying Chapter 7 case, filed a Complaint against Chrysler Financial Company, LLC ("Chrysler") seeking to void Chrysler's purported lien on the Debtor, Timothy D. Prindle's ("Debtor") 2001 Dodge pickup as a preferential transfer. Chrysler responded by asserting that its properly perfected security interest in the Debtor's 2000 Dodge Dakota pickup transferred to the 2001 vehicle, thereby negating the necessity of resubmitting a notice of lien within the 20–day period provided in 11 U.S.C. § 547(c)(3)(B).

The parties stipulated to the facts and submitted the matter to the Court without further evidence. The Court has reviewed the pleadings and the stipulated facts and the parties' trial briefs, has conducted its own independent research, and is now ready to rule.[1] For the reasons set out below, the Court finds that Chrysler's purported lien in the 2001 vehicle was preferential and must be declared null and void.

This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § § 157 and 1334 and 11 U.S.C. § 547. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

## FACTUAL BACKGROUND

The parties have stipulated to and the Court finds the following facts:

1. On November 8, 2000, the Debtor entered into a Retail Installment Contract with Sut Hill Trenton for the purchase of a 2000 Dodge Dakota. The purchase price for the vehicle was $24,900.00, and after credit for equity in his trade-in and the addition of a service contract, the Debtor agreed to finance the amount of $24,299.00 with Chrysler. The term of the contract was 60 months with an interest rate of 0.9%, and the Debtor's monthly payments of $414.48 were to begin on December 23, 2000.

2. Chrysler bought the Retail Installment Contract from the dealer on November 14, 2000.

3. On November 17, 2000, the Notice of Lien form sent by the dealer was received by the Missouri Department of Revenue, Motor Vehicle Bureau.

4. Also on November 17, 2000, Chrysler was contacted by a representative of the dealer, who stated that the 2000 Dodge Dakota had been declared a total wreck and that the Debtor was requesting a substitution of collateral for the Retail Installment Contract.

5. On November 20, 2000, Chrysler faxed a Substitution of Collateral form to the dealer to be completed and executed by the Debtor. The cover letter instructed the dealer to return the bill of sale,

---

**1.** This Memorandum Opinion and Order constitutes the Court's findings of fact and con- clusions of law as required by Rule 7052, FED. R. BANK. P.

Notice of Lien, insurance verification, and the signed Substitution of Collateral form.

6. The Debtor's insurer, American Family Insurance Company, valued the Dakota at $22,000.00 and agreed to pay $21,500.00 after accounting for the Debtor's $500.00 deductible amount. Chrysler agreed to release its lien on the Dakota for payment of $21,500.00.

7. On December 15, 2000, Chrysler received from the dealer the executed Substitution of Collateral form, an original MADA Form 4809 Notice of Lien, and a copy of the Manufacturer's Certificate of Origin on the substituted vehicle, a 2001 Dodge 1500 pickup. The documents showed the selling price for the 2001 Dodge pickup was $21,500.00, plus delivery fees and a service contract, for a total of $23,348.95.

8. The Debtor took delivery of the 2001 Dodge pickup on December 15, 2000.

9. The Debtor paid no extra consideration for the substituted vehicle.

10. On January 12, 2001, the Debtor submitted an application for title to the 2001 Dodge pickup, which noted the lien of Chrysler.

11. On March 2, 2001, the Debtor filed his Chapter 7 case in the Western District of Missouri. This filing occurred 49 days after the title application was submitted by Debtor on the 2001 Dodge pickup, and 89 days after Chrysler's lien on the 2000 Dodge Dakota was perfected.

12. The insurance proceeds of $21,500.00 from the totaled Dodge Dakota were paid to the dealer for the new vehicle rather than paying off the loan to Chrysler on the Dodge Dakota.

2. Title 11, United States Code.

## DISCUSSION

Section 547(b) of the Bankruptcy Code[2] allows a trustee to avoid a payment or other transfer of a property interest of a debtor to a creditor upon a showing that the transfer was:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if-

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).

A "transfer" is defined in § 101(54) of the Bankruptcy Code as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property..." 11 U.S.C. § 101(54).

The Trustee argues that he has established every element of a preference and therefore the lien must be avoided as preferential. The Trustee further contends that Chrysler is not entitled to the protec-

tions of § 547(c)(3)[3] because Chrysler did not perfect its security interest in the 2001 Dodge pickup until January 12, 2001, which was 28 days after the Debtor had taken possession of the vehicle on December 15, 2000, and within 90 days of the bankruptcy filing.

Chrysler counters that the 2001 Dodge pickup was merely substituted as collateral on the earlier note and security agreement for the 2000 Dodge Dakota, which had been totally demolished in an accident, and that the transaction is therefore protected by the earmarking doctrine as enunciated by the Eighth Circuit Court of Appeals in *Kaler v. Community First Nat'l Bank (In re Heitkamp)*, 137 F.3d 1087 (8th Cir. 1998), subsequently followed by the Eighth Circuit Bankruptcy Appellate Panel in *Krigel v. Sterling National Bank (In re Ward)*, 230 B.R. 115 (8th Cir. BAP 1999) ("*Ward*").

■ Chrysler's reliance on the earmarking doctrine is misplaced. The earmarking doctrine is a judicially created exception to § 547 that derives from the statutory requirement that a transfer, in order to be deemed preferential, must be "of an interest of the debtor in property." *Buckley v. Jeld–Wen, Inc. (In re Interior Wood Products Co.)*, 986 F.2d 228, 231 (8th Cir.1993); *Stingley v. AlliedSignal, Inc. (In re Libby International, Inc.)*, 240 B.R. 375, 377 (Bankr.W.D.Mo.1999). The Bankruptcy Appellate Panel in *Ward* succinctly summarized the doctrine:

■ "According to the earmarking doctrine, there is no avoidable transfer of the debtor's property interest when a new lender and a debtor agree to use loaned funds to pay a specified antecedent debt, the agreement's terms are actually performed, and the transaction viewed as a whole does not diminish the debtor's estate. No avoidable transfer is made because the loaned funds never become part of the debtor's property. Instead, a new creditor merely steps into the shoes of an old creditor." *Ward*, 230 B.R. at 118.

First, the earmarking doctrine does not fit in this case because there is no new lender making a loan to pay a specified antecedent debt. In fact, no new loan was made at all, and no antecedent debt was paid off. Chrysler simply agreed to accept the 2001 Dodge pickup as new (or substituted, if you prefer) collateral for its November 2000 loan, which had become unsecured as a result of the release of the lien on its original collateral, the 2000 Dodge Dakota. The antecedent debt was not paid off, but continued in effect without any changes in its terms and conditions, other than the substitution of collateral.

Second, contrary to Chrysler's argument, the transaction, viewed as a whole, *does* diminish the Debtor's estate. After the 2000 Dodge Dakota was wrecked on November 17, 2000, Chrysler released its lien on that vehicle in return for the Debtor's insurer's payment of $21,500.00 in insurance proceeds to the Debtor (with Chrysler's approval). Then, on December 15, 2000—almost a month later and using

**3.** Section 547(c)(3) provides that a trustee cannot avoid a transfer

(3) that creates a security interest in property acquired by the debtor—

(A) to the extent such security interest secures new value that was—

(i) given at or after the signing of a security agreement that contains a description of such property as collateral;

(ii) given by or on behalf of the secured party under such agreement;

(iii) given to enable the debtor to acquire such property; and

(iv) in fact used by the debtor to acquire such property; and

(B) that is perfected on or before 20 days after the debtor receives possession of such property;

the insurance proceeds he had received—the Debtor purchased the 2001 Dodge pickup and signed the necessary documents to give Chrysler a security interest in the new vehicle. However, Chrysler did not perfect its security interest in the new vehicle until January 12, 2001, some 28 days later, when it submitted the title application to the Department of Revenue. Because Chrysler's security interest was not perfected within 20 days of the date the Debtor took possession of the new vehicle, the "transfer" for bankruptcy preference purposes was deemed made on that date, 11 U.S.C. § 547(b)(2)(B), and was therefore preferential. The transfer was on account of an antecedent debt, *Gregory v. Community Credit Co. (In re Biggers)*, 249 B.R. 873, 877 (Bankr.M.D.Tenn.2000), and therefore the Debtor's bankruptcy estate was diminished.

■ Although Chrysler in its trial brief argued a substitution of collateral theory, it has not cited any cases or authority for that proposition. Perhaps it recognized that the authorities would not support the argument. It is generally accepted that a substitution in collateral is a proper defense to a preference action, if it meets the requirements of 11 U.S.C. § 547(c)(1)(A) and (B).[4] *Eide v. United States of America (In re Quade)*, 108 B.R. 674, 679 (Bankr.N.D.Iowa 1989). "The mere substitution of new security in the place of security for an old debt does not ordinarily create a preference because there is no diminution of the debtor's estate whereby the creditors may be injured. 4 Collier on Bankruptcy, ¶ 547.22 (15th ed.1981). It is a different matter, however, when the transaction actually results in a depletion of the debtor's assets. In such a case, where the new security is of greater value than the old, a voidable preference for the difference in value between the two securities may result." *Lancaster v. First National Bank of Greeneville (In re Cloyd)*, 23 B.R. 51, 54 (Bankr.E.D.Tenn.1982). *See also Sawyer v. Turpin*, 91 U.S. 114, 120, 23 L.Ed. 235 (1875) ("It is too well settled to require discussion, that an exchange of securities within the four months [now 90 days] is not a fraudulent preference within the meaning of the Bankrupt Law, even when the creditor and the debtor know that the latter is insolvent, if the security given up is a valid one when the exchange is made, and if it be undoubtedly of equal value with the security substituted for it.").

As these cases demonstrate, the substitution of new collateral for released collateral is not preferential if the estate is not diminished. The theory necessarily assumes that the creditor has a continuing security interest in the property of the debtor. For example, where the creditor has a continuing interest in accounts receivable or equipment of the debtor, it is not preferential for the debtor to substitute new accounts receivable or equipment for the old where the debtor has received the proceeds from the liquidation of the released collateral and the substituted collateral is of equal value (or perhaps less) to the released collateral. *In re Pusey–Maynes–Breish Co.*, 37 F.Supp. 316, 322 (E.D.Pa.1941). However, the theory does not assist the creditor where, as in this case, the security interest in the released collateral has been terminated and the debtor gives new collateral which requires

---

4. (c) The trustee may not avoid under this section a transfer—
   (1) to the extent that such transfer was—
   (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and
   (B) in fact a substantially contemporaneous exchange;
   11 U.S.C. § 547(c)(1)(A) and (B).

"re-perfection" of the creditor's security interest. This is especially true where state law provides an exclusive method for the perfection of a security interest in a motor vehicle.

Under Missouri law, a lien on a motor vehicle is perfected by taking all of the steps necessary for perfection pursuant to Sections 301.600 to 301.660. MO. REV. STAT. Unless the lien is perfected as required by those statutes, the lien is not valid against subsequent transferees or lienholders of the motor vehicle who took without knowledge of the lien. Section 301.600.1, Mo. REV. STAT. Here, there was a period of time in which a previously unsecured creditor—such as a judgment creditor, the Internal Revenue Service, or a bankruptcy trustee—could acquire a superior interest to that of Chrysler in the 2001 Dodge pickup when Chrysler failed to perfect its security interest within 20 days of the date the Debtor took possession of the vehicle. As a hypothetical lien creditor, the bankruptcy trustee takes without knowledge of the unperfected lien. 11 U.S.C. § 544(a)(1, 2).

The present situation is analogous to the release of a repairman's statutory possessory lien for the repair of a vehicle. If the mechanic releases the repaired vehicle to the owner and takes in another vehicle for repairs, the mechanic loses his possessory lien in the first vehicle. The lien does not transfer to the second vehicle and the second vehicle cannot be substituted, in effect, as collateral to secure the repair bill on the first vehicle. *See Leonard v. Dahlke Trailer Sales & Leasing Co.*, 16 B.R. 366 (Bankr.D.Minn.1982).

Similarly, in this case Chrysler released its lien on the 2000 Dodge Dakota and therefore had no collateral for its loan until the Debtor acquired the 2001 Dodge pickup on December 15, 2000, and executed the new documents necessary to give Chrysler a security interest in the 2001 Dodge pickup. Chrysler's lien on the 2000 Dodge Dakota could not be transferred and was not transferred to the 2001 Dodge pickup because, under Missouri law, the only way to perfect a security interest in a motor vehicle is to have the lien noted on the certificate of title. Between December 15, 2000, and January 12, 2001, Chrysler had, at best, an unperfected security interest in the new 2001 vehicle. When Chrysler failed to perfect its security interest within the 20 days required by § 547(c)(3), the date of the "transfer" for preference purposes became January 12, 2001, not December 15, 2000. Because the Debtor filed bankruptcy within 90 days thereafter, the transfer was made while the Debtor was presumptively insolvent pursuant to 11 U.S.C. § 547(e)(3)(F). Chrysler's untimely perfection of its lien would allow it to receive more in this Chapter 7 case than it would receive if the transfer had not been made. The Trustee has, therefore, proved all elements necessary to establish a preferential transfer of an interest in the 2001 Dodge pickup. Chrysler's perfection of its security interest diminished the Debtor's bankruptcy estate and was a voidable preference. *Fidelity Financial Services, Inc., v. Fink*, 522 U.S. 211, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998).

Therefore, it is

**ORDERED** that the relief sought by the Trustee, Bruce E. Strauss, be and is hereby **GRANTED,** the lien obtained by Chrysler Financial Company, LLC, in the Debtor's 2001 Dodge 1500 SLT 4 × 4, VIN1B7HF16Y31S153269, is hereby declared null and void, and the perfection of the lien by Chrysler Financial Company, LLC, in that vehicle on or about January 12, 2001, is declared a preference and is hereby voided.