In re Jack H. STOERCK and Janice M. Stoerck, Debtors.

Eric R.-T. ROOST, Trustee, Plaintiff,

v.

GREEN TREE FINANCIAL SERVICING CORPORATION, Defendant.

Bankruptcy No. 696–65911–fra7. Adversary No. 98–6028–fra.

United States Bankruptcy Court, D. Oregon.

Nov. 25, 1998.

Eric R.-T. Roost, Eugene, OR, pro se.

Trish Brown, Portland, OR, for Defendant.

## MEMORANDUM OPINION

FRANK R. ALLEY, III, Bankruptcy Judge.

### I. INTRODUCTION

The Debtors purchased a manufactured home, and the real property on which to place it, from Woodland Sales Company. The sale was financed by Defendant Green Tree Financial Servicing Corporation, which acquired a security interest in the land, manufactured home, and appurtenant structures. The Trustee now seeks to avoid the security interest in the manufactured home on the grounds that the security interest was not perfected at the time the petition for relief was filed. The matter was tried largely on stipulated facts set out in the pre-trial order, with additional testimony at a short trial on November 10, 1998.

Given the facts of the case and applicable Oregon law, I find for the Trustee.

### II. NATURE OF PROCEEDING

This action is brought by the Trustee pursuant to 11 U.S.C. §§ 547, 549 and 550. This Court has jurisdiction pursuant to 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(F).

### III. FACTS

On or about July 31, 1996 Debtors Jack and Janice Stoerck contracted to purchase from Woodland Sales Company ("Woodland") a 1996 Fuqua manufactured home, the lot on which it was situated in Florence, Oregon, and certain improvements to be made on the lot and manufactured home. By the time of the sale the manufactured home had been placed on the lot, the wheels removed, a garage attached, and utilities connected.

The sale price of the property was $97,000. Of this amount $52,000 was allocated by the seller to the manufactured home. (The record is unclear as to whether the Debtors were aware of, much less acquiesced in, that allocation.) Debtors paid $20,000 down, and borrowed the difference from Woodland. Woodland, with Debtors' consent, assigned the loan to Defendant Green Tree Financial Servicing Corporation ("Green Tree").

The sale was closed in escrow on October 24, 1996. Debtors executed and tendered to the escrow a deed of trust naming Woodland as beneficiary. The trust deed described, and purported to include, the lot, improvements, and the manufactured home. It was recorded on October 24, 1996 in the appropriate records in Lane County. Recorded as the next document in sequence was an assignment of the beneficial interest under the trust deed by Woodland to Green Tree.

The manufactured structure was originally constructed in June 1995, and then sold by the manufacturer to Woodland. A Manufacturer's Certificate of Origin ("MCO") was prepared by the manufacturer at that time, and delivered to Woodland. The MCO was then delivered by Woodland to Ford Consumer Finance Company ("FCFC") pursuant to a standing inventory financing agreement

between Woodland and FCFC.[1]

Prior to the closing of escrow, the escrow agent obtained from FCFC a statement of the amount FCFC required to release its interest in the unit being sold. On the closing date, the escrow agent sent the payoff amount to FCFC by mail, with a cover letter advising that the funds were tendered on the condition that FCFC return the Manufacturer's Certificate of Origin. As will be shown, obtaining the MCO was a necessary step in ultimately completing the transaction.

FCFC returned the MCO, and a request for reconveyance authorizing the release of its interest in the real property, on or about January 27, 1997. Thereafter the escrow agent secured the necessary signatures on an application to exempt the manufactured structure from registration and titling. The Application and the MCO were delivered by the escrow to the Oregon Department of Transportation, Driver and Motor Vehicles Services Division (DMV) on June 17, 1997. The application for exemption was approved on July 15 and returned to the escrow agent, which caused the application to be recorded in the real property records of Lane County on July 21, 1997.

Debtors filed their petition for relief under Chapter 7 of the Bankruptcy Code on November 18, 1996.

## IV. ANALYSIS

### A. Trustee's avoiding powers.

The parties do not dispute that the Defendant has a valid and perfected security interest in the land and improvements other than the manufactured home. The Trustee's avoidance action with respect to the manufactured home is based on the understanding that the transfer relating to the manufactured home did not occur until July 21, 1997 when the approved application for DMV exemption was recorded. The Trustee asserts two grounds for avoiding the security inter-

est in the manufactured home. The first is that, since perfection of a security interest constitutes a transfer under bankruptcy law, *In re Grand Chevrolet, Inc.*, 25 F.3d 728, 731 (9th Cir.1994), the perfection in this case occurred after the filing of the bankruptcy petition, and without Court authority. It is therefore voidable under Code § 549. Moreover, the Trustee asserts, the transfer was on account of an antecedent debt, since it operated to perfect a security interest attributable to a debt incurred nearly ten months earlier and is therefore an avoidable preference. 11 U.S.C. § 547.

Defendant asserts that its security interest in all of the property sold was duly perfected at the time the sale closed, by recording the trust deed describing the land and the manufactured home. The matter thus turns on what Oregon law requires for perfection of a security interest in the manufactured home.

### B. Defendant's security interest in manufactured home is unperfected.

Consideration of this issue requires a review of Oregon's convoluted statutory scheme regarding title to and security interests in manufactured homes. Convoluted is not the same as "ambiguous" and it is clear that perfection of a security interest in a "titled" manufactured structure must be accomplished by notation on the certificate of title. Recording a trust deed describing the structure is insufficient unless the structure has been exempted from the title statutes.

It should be noted to begin with that the statutory term for the structure at issue here is "manufactured structure." ORS 801.333(1)(a).[2]

ORS 820.500 provides, in pertinent part:

.... Manufactured structures are subject to the same provisions concerning registration, titling, salvage title, sale by dealers, transfers, transfers of interests and payment of fees as required for any other

---

1. The record is not absolutely clear on this point: it may be that the MCO was delivered by the manufacturer directly to FCFC. However, it is not disputed that FCFC held the MCO with Woodland's consent.

2. ORS 801.333(1)(a) defines "manufactured structure" as, among other things, "a manufactured dwelling that is more than eight and one-half feet wide." The MCO and other sale documents presented to the Court establish that the property in question meets this description.

vehicle required to be registered under the Vehicle Code. The following provisions apply to manufactured structures:

\* \* \*

(3) The Department shall not issue title or register a new manufactured structure without presentation of information from the manufacturer containing the year of manufacture, the make and the manufacturer's vehicle identification number. The manufacturer of a manufactured structure shall issue with each manufactured structure to be sold in this State, the information required by this subsection in a form determined by the Department by rule.

ORS 803.097 provides that:

The exclusive means for perfecting a security interest in a vehicle is by application for notation of the security interest on the title in accordance with this section.

An exception is made for vehicles held by dealers in their inventories.

■ Defendant's and the amicus argument suggest that ORS 820.500 does not include attachment or perfection of security interests. Granted, it is generally held that the mention of one or more things in a statute implies the exclusion of all others. *See, e.g., Jeldness v. Pearce,* 30 F.3d 1220 (9th Cir.1994). However, the rule is one of construction, not of law, and must be carefully applied. *Cabell v. City of Cottage Grove,* 170 Or. 256, 130 P.2d 1013 (1942). Courts must construe statutes in context, and consistently with the overall statutory scheme. The legislature created a comprehensive scheme for the registration, titling, and transfer of motor vehicles. It also provided that manufactured structures be subject to the same regime in virtually every respect. There is no reason to suppose that the legislature intended to exclude an essential aspect of the scheme—the attachment and perfection of security interests—and make it subject to an altogether different set of rules. In nearly all other cases, ownership and security interests are registered in the same manner. For example, all interests in real property are recorded at county recorders' offices; all interests in motor vehicles are noted on certificates of title. I believe the legislature intended to be consistent in its treatment of manufactured structures, and to provide that ownership and security interests be monumented and perfected in the same manner. This view renders ORS 820.500 consistent with 821.510, which makes real property law applicable only *after* a manufactured structure is exempted from title and registration statutes.

■ Accordingly, I hold that ORS 820.500 makes the attachment and perfection of security interests under ORS 803.097 applicable to manufactured structures. As long as a manufactured structure is subject to the issuance of a certificate of title, the exclusive means of perfecting a security interest in it is by notation on the certificate.

The Motor Vehicle Code does provide for treatment of a manufactured structure as real property, should the owner so elect. Under ORS 820.510 the owner of a manufactured structure that is located on land to which the owner has record title may obtain an exemption from the requirement to register and title the structure under the Vehicle Code. Exemption requires surrender either of the certificate of title and registration, if those have been issued, or the Manufacturer's Certificate of Origin. (Note that delivery of the Certificate to the DMV is also a prerequisite to the issuance of a certificate of title.) ORS 820.510(2) provides:

(2) If an exemption is obtained for a manufactured structure under this section, the following apply:

(a) except as otherwise provided in this section or by the rules of the Department, a manufactured structure, *upon obtaining the exemption under this section,* shall become subject to the same provisions of law in this state that would apply to any other building, housing or structure on the land. [Emphasis added].

■ The legislature has, in the foregoing provision, drawn a bright line: until and unless exemption from registration is allowed by the DMV, a property interest, whether ownership or security, in a manufactured structure is documented by a certificate of title issued by the Department. A security interest in a manufactured structure must be

perfected by notation on the certificate of title. Oregon real property law regarding the attachment of fixtures to real property does not come into play until the exemption is approved. In this case, that means that Green Tree's security interest was not perfected at the time the petition for relief was filed by the Debtors. To the extent that the application for exemption and its allowance accomplish perfection (because of the previously recorded trust deed), the perfection occurred postpetition and in derogation of the automatic stay, 11 U.S.C. § 362(a), and is therefore void.

Testimony was provided at trial that the closing escrow was conducted in a manner now customary in Oregon. Flooring financiers such as FCFC generally insist on retaining the MCO until they are paid. The statutory provenance of the MCO is that it is the statement of information described in ORS 820.500(3). However, since delivery of the statement is a prerequisite to obtaining title, lenders have employed it as a sort of certificate of title in its own right. These creditors retain the MCO as a means of insuring payment as the borrower/dealer makes sales. When asked at trial why the lender should not simply rely on its perfected security interest in the inventory, counsel for Defendant suggested, no doubt correctly, that the reason is that retention of the MCO provides protection against sale by the dealer to a bona fide purchaser, which would take free of the inventory security interest. *See* ORS 79.3070.

Defendant and Amicus Oregon Land Title Association argue that strict construction of the statute would have an adverse effect on the manufactured home market, since it would be difficult or impossible to acquire MCOs from flooring financiers prior to closure of the sale. However, Defendant concedes that it is not impossible to proceed in this manner.

■ The statute is clear and unambiguous: Oregon law requires that courts construing Oregon law look to the plain language of the statute, since the text of the statutory provision is "the starting point for interpretation and is the best evidence of the legislature's intent." *PGE v. Bureau of Labor and In-*

*dustries,* 317 Or. 606, 859 P.2d 1143 (1993), *Davis v. Campbell,* 327 Or. 584, 965 P.2d 1017 (1998).

■ Given the clear statutory scheme, it is not the place of a court—especially a federal court—to consider policy arguments as to how state law may be improved. These are questions which must be addressed to the Oregon legislature. It is argued that ORS 820.510(2)(c) somehow excepts manufactured homes from the statutory scheme once they have been affixed to real estate. The provision states that the exemption process does not affect "any lien or security interest in a manufactured structure that is exempted under this section if the security interest or lien attaches before the exemption is obtained." Defendant's interpretation of this statute puts it squarely in conflict with ORS 820.510(2)(a), which clearly states that Real Property Doctrine is inapplicable *until* the exemption is obtained. Statutes should be construed as to be internally consistent. *Chevron USA, Inc. v. Motor Vehicles Div.,* 49 Or.App. 1099, 1103, 621 P.2d 668, 670 (1980). The consistent interpretation of ORS 820.510(2)(c) is that exemption of the property does not disturb a security interest previously attached and perfected by notation on the now superfluous certificate of title.

■ The amicus brief further argues that the Defendant's security interest was perfected at the time the escrow closed, because the secured party had completed the steps necessary to perfect its interest, citing to *Fidelity Financial Services, Inc. v. Fink,* 522 U.S. 211, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998). However, Defendant here failed to do all that was necessary when it failed to require escrow instructions which in turn required the flooring financier to tender the MCO into escrow. As noted above, there is no reason this could not have been done, other than the practice of flooring financiers to withhold the certificate until payment is received outside of escrow. A party is not relieved of the duty to take certain steps to perfect its security interest simply because another party declines to cooperate.

The Defendant raises two additional affirmative defenses. First, Defendant claims

that the flooring financier held the MCO in constructive trust for the benefit of Defendant once it was paid. There are two flaws in this argument. First, notwithstanding the practical effect of withholding delivery, the MCO is not an instrument of title. It follows that, as far as perfecting a security interest is concerned, mere possession of the MCO is of no significance. Even if the flooring financier can be said to hold the MCO in trust for Green Tree, it is not possession or delivery of the document which perfects title, but notation of the security interest on a certificate of title. The fact that the MCO must be delivered as part of the process of applying for a certificate of title does not make possession the equivalent of perfection, any more than executing, but not delivering the application would.

Defendant also asserts that it is subrogated to FCFC's position as a secured creditor. Equitable subrogation occurs when one party has paid the debt of another. However, stepping into FCFC's shoes would not be sufficient to acquire a perfected security interest in the particular unit, since it was no longer part of anyone's inventory, and perfection by notation on the title was therefore required.

## V. CONCLUSION

Until and unless a manufactured structure is exempted from title and registration requirements under the Motor Vehicle Code, the sole means of perfecting a security interest therein is by notation on the certificate of title. At the time the petition for relief was filed there had been neither an application for exemption nor a notation on the title. It follows that the Defendant's security interest in the manufactured structure was unperfected at the time of the petition, and subject to avoidance by the Trustee. Judgment must be entered for Plaintiff.

The foregoing constitutes the Court's finding of fact and conclusions of law, which will not be separately stated. Counsel for the Trustee shall submit a form of judgment consistent with the foregoing.