**In re Jeremy Logan McFARLANE and Heather Dawn McFarlane, Debtors.**

**In re Stephen Edward Featherston, Debtor.**

**In re Charles Keith Rogers and Teresa Marie Rogers, Debtors.**

**Nos. 03–30194–JWV, 03–30454– JWV, 03–30548–JWV.**

United States Bankruptcy Court, W.D. Missouri, Southwestern Division.

Aug. 27, 2003.

Sherrie L. Hansen, Anderson, MO, J. Kevin Checkett, Checkett & Pauly, Carthage, MO, Mitchell B. Cross, Parrish, Jacobs, Cross & Genisio, Joplin, MO, for debtors.

Norman Rouse, Collins, Webster & Rouse, Joplin, MO, trustee.

### MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

The issue presently before the Court in these three Chapter 7 proceedings is whether the creditors claiming a security interest in the Debtors' vehicles have properly perfected their liens in those vehicles, so that the liens would be superior to the hypothetical lien of the Chapter 7 Trustee. The Chapter 7 Panel Trustee, Norman E. Rouse ("Trustee"), pointing to recent statutory changes in Missouri, contends that the only way to perfect a lien on a motor vehicle in Missouri is for the secured creditor to file a "notice of lien" with the Mis-

souri Department of Revenue pursuant to the provisions of Mo.Rev.Stat. §§ 301.600(2) and 301.620(2). The Trustee then asserts that the creditors are not entitled to relief from the automatic stay to allow them to repossess the Debtors' vehicles in these cases because they have not filed a "notice of lien," and thus their liens are not perfected.

The Court held hearings in all three cases in Carthage, Missouri, on June 26, 2003, and took the matters under advisement. After reviewing the arguments of counsel and considering the relevant law, the Court is convinced that the Trustee's position is not well taken and that his objections to granting the relief requested by the secured creditors should be overruled. Accordingly, the creditors' motions for relief from the automatic stay of 11 U.S.C. § 362(a) will be granted, no objections being filed by the Debtors.[1]

## I. BACKGROUND

There is no dispute over the facts in these three cases, and the facts can be briefly stated.

In the *McFarlane* case, No. 03–30194, the Debtors, Jeremy Logan McFarlane and Heather Dawn McFarlane ("McFarlanes"), purchased a 2001 Dodge Stratus automobile on or about December 30, 2000, and granted WFS Financial ("WFS") a security interest in the automobile. The required paperwork was promptly and timely filed and WFS had its lien noted on the certificate of title. On February 21, 2003, the McFarlanes filed this Chapter 7 bankruptcy case, and on May 14, 2003, WFS filed a motion for relief from the automatic stay of 11 U.S.C. § 362(a) so

that it could repossess and liquidate the automobile.

In the *Featherston* case, No. 03–30454, the Debtor, Stephen Edward Featherston ("Featherston"), purchased a 1997 Ford F–150 pickup on or about September 22, 2001, and granted WFS a security interest in the truck. WFS promptly and timely filed the necessary paperwork with the Department of Revenue and its lien was duly noted on the certificate of title. On April 10, 2003, Featherston filed this Chapter 7 bankruptcy proceeding, and on May 15, 2003, WFS filed its motion for relief, seeking leave to repossess and liquidate the truck.

Finally, in the *Rogers* case, No. 03–30548, the Debtors, Charles Keith Rogers and Teresa Marie Rogers ("Rogerses"), bought a 2001 Hyundai automobile on or about October 20, 2001, and granted Hyundai Motor Finance Company ("Hyundai Finance") a security interest in the automobile. Hyundai Finance promptly and timely filed the necessary paperwork with the Department of Revenue and its lien was duly noted on the certificate of title. On April 30, 2003, the Rogerses filed this Chapter 7 case, and on May 15, 2003, Hyundai Finance filed its motion for relief, seeking leave to repossess and liquidate the car.

In all three cases, it is agreed, the secured creditors did not file a notice of lien as provided in Mo.Rev.Stat. §§ 301.600(2) and 301.620(2). It is, however, undisputed that—with the exception of the nonfiling of a notice of lien—the secured creditors undertook all the steps necessary, under the provisions of §§ 301.600 to 301.660, to have their liens timely noted on the Debtors'

---

1. The Court has jurisdiction over these questions pursuant to 28 U.S.C. §§ 157 and 1334. These matters are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(G) and (K). This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr.P. 7052, made applicable to these proceedings by Fed. R. Bankr.P. 9014(c).

certificates of ownership. Also, in all three cases, the Debtors did not object to the secured creditors' Motions for Relief.

## II. DISCUSSION

 The purpose of a certificate of ownership law is to establish a reliable system for giving notice of encumbrances to potential purchasers or creditors. *Meeks v. Mercedes Benz Credit Corp. (In re Stinnett)*, 257 F.3d 843, 845 (8th Cir. 2001) (citing *Hoffman v. Associates Commercial Corp. (In re Durette)*, 228 B.R. 70, 72–74 (Bankr.D.Conn.1998)). The advantage of having uniform certificate of ownership laws is that a potential creditor need look only to one place—the certificate of ownership—to discover prior security interests. *Uhle v. Parts & Trucks (In re Paige)*, 679 F.2d 601, 603 (6th Cir.1982). In this manner, a certificate of ownership serves the same purpose as a financing statement under Article 9 of the Uniform Commercial Code in that it provides a method of secured financing. *In re Males*, 999 F.2d 607, 612 (2nd Cir.1993). Unlike Article 9, which was promulgated to ameliorate the harshness of secret non-possessory liens, certificate of ownership laws also serve to deter crime associated with collateral that is highly mobile. Larry T. Bates, *Certificates of Title in Texas Under Revised Article 9*, 53 Baylor L.Rev. 735, 736 (2001). *See also* Uniform Motor Vehicle Certificate of Title and Anti–Theft Act § 6(c)(1); Rev. Stat. Mo. § 301.210 (stating that a sale without a transfer of the certificate of ownership is fraudulent and void).

Under Missouri law, an applicant cannot obtain a certificate of ownership to a vehicle without first informing the director of revenue as to any liens or encumbrances secured by that vehicle. Mo.Rev.Stat. § 301.190. Regarding perfection, the two sections of the Missouri statutes that are at issue here are §§ 301.600 and 301.620. In relevant part to the issue raised, they provide:

> **Liens and encumbrances, how perfected—effect of on vehicles and trailers brought into state—security procedures for verifying electronic notices**
>
> 1. [A] lien or encumbrance on a motor vehicle ... is not valid against subsequent transferees or lienholders of the motor vehicle ... who took without knowledge of the lien or encumbrance unless the lien or encumbrance is perfected as provided in sections 301.600 to 301.660.
>
> 2. Subject to the provisions of section 301.620, a lien or encumbrance on a motor vehicle ... is perfected by the delivery to the director of revenue of a notice of a lien in a format as prescribed by the director of revenue.... The notice of lien is perfected as of the time of its creation if the delivery of such notice to the director of revenue is completed within thirty days thereafter, otherwise as of the time of the delivery. A notice of lien shall contain the name and address of the owner of the motor vehicle or trailer and the secured party, a description of the motor vehicle or trailer, including the vehicle identification number, and such other information as the department of revenue may prescribe. A notice of lien substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading....

Mo.Rev.Stat. § 301.600 (2003).

> **Duties of parties upon creation of lien or encumbrance, violation, penalty**
>
> If an owner creates a lien or encumbrance on a motor vehicle or trailer:
>
> (1) The owner shall immediately execute the application, in the space provided therefor on the certificate of ownership

or on a separate form the director of revenue prescribes, to name the lienholder on the certificate, showing the name and address of the lienholder and the date of the lienholder's security agreement, and cause the certificate, application and the required fee to be delivered to the director of revenue;

(2) The lienholder or an authorized agent ... shall deliver to the director of revenue a notice of lien as prescribed by the director accompanied by all other necessary documentation to perfect a lien as provided in section 301.600;

. . . . .

(4) Upon receipt of the documents and fee required in subdivision (3) of this section, the director of revenue shall issue a new certificate of ownership containing the name and address of the new lienholder, and shall mail the certificate as prescribed in section 301.610. . . .

Mo.Rev.Stat. § 301.620.

 Prior to 1999, the stated method to perfect an interest in a motor vehicle was to have that interest noted on the debtor's certificate of ownership. Mo.Rev. Stat. § 301.600 (1998). The Trustee argues that, as a result of amendments to these statutory provisions in 1999, the *only* way to perfect a lien on a motor vehicle in Missouri at this time is for the secured creditor to file a notice of lien with the Department of Revenue. Counsel for the secured creditors contend, on the other hand, that the filing of a notice of lien is an *additional* means of protection for a secured creditor outside of the certificate of title law. A review of recent case developments and Missouri's comprehensive statutory coverage of motor vehicle financing lead this Court to conclude that the notice

of lien provision in Mo.Rev.Stat. § 300.600 is not the only method to perfect a security interest in a motor vehicle. Instead, in this Court's view, the notice of lien procedure is a method to protect a secured creditor's security interest in a motor vehicle for a limited time, until the secured creditor or the vehicle owner files the necessary documents to perfect the lien.[2]

## A. Recent Case Developments—*In Re Beasley*

Under Missouri law, if a creditor perfects a security interest in a motor vehicle within *thirty* days of its creation, the date of perfection relates back to the date the security interest was created. Mo.Rev. Stat. § 301.600(2). A trustee in bankruptcy, however, may avoid a security interest as a preferential transfer if the security interest was created within ninety days of filing a petition, and if the security interest was perfected more than *twenty* days after the debtor took possession of the motor vehicle. 11 U.S.C. § 547(c)(3)(B). Under the former certificate of ownership laws of Missouri, some creditors had a difficult time complying with the twenty-day limitation, which resulted in trustees in bankruptcy filing actions to avoid their liens as avoidable preferences. *Fidelity Financial Services, Inc. v. Fink (In re Beasley)*, 522 U.S. 211, 212–13, 118 S.Ct. 651, 139 L.Ed.2d 571 (1998). Creditors have difficulty perfecting their liens on a certificate of ownership within the twenty-day statutory period for a variety of reasons. *See, e.g., In re Tressler*, 771 F.2d 791, 793 (3rd Cir.1985) (lack of diligence by the Pennsylvania Department of Transportation); *Russell v. Quality Auto City, Inc. (In re Hermann)*, 271 B.R. 892, 895 (Bankr.

---

**2.** The Court need not reach the question of whether a lien on a motor vehicle would be validly perfected if nothing more than a "notice of lien" is filed with the director of reve-

nue. In the present case, the secured creditors timely filed the necessary paperwork to put their lienholder status on the certificate of ownership.

D.Wyo.2001) (failure of debtor to timely pay fees and refusal of county to issue a title until all fees were paid); *In re Jarvis,* 242 B.R. 172, 174 (S.D.Ill.1999) (delay in delivery of mail); *Westenhoefer v. Chrysler Credit Corp. (In re Williams),* 208 B.R. 882, 883 (Bankr.E.D.Ky.1997) (delay in receiving paperwork from an auto auction).

In apparent response to this difficulty, the Trustee asserts that the Missouri General Assembly amended Mo.Rev.Stat. § 301.600 in 1999 to allow a lender to temporarily perfect its lien by simply filing a "notice of lien" with the director of revenue. Information included in the notice of lien consists of the name and address of the owner and secured party, a description of the motor vehicle, and the motor vehicle identification number. Mo.Rev.Stat. § 301.600(2). Thus, in an apparent reaction to *Beasley,* the notice of lien statute provided the creditor with a more expeditious method of perfecting its interest. This comparative quickness ameliorated the harshness of the twenty-day statutory period for perfecting liens under § 547(c)(3)(B) of the Bankruptcy Code because the creditor was not dependent on the actions of third parties or the debtor, and the creditor was able to maintain control of the transaction.

### B. Missouri's Statutory Scheme for Motor Vehicle Financing

A review of the mechanics of motor vehicle lien creation, under the exclusive provisions of the Mo.Rev.Stat. §§ 301.600—301.660, when combined with the backdrop of *Beasley,* convinces this Court that filing a notice of lien is not the exclusive method to perfect an interest in a motor vehicle in Missouri. Several grounds support this conclusion.

First, after the Missouri General Assembly amended its motor vehicle lien laws in 1999, two sets of papers exist: the "application," which is part of the certificate of ownership, and the "notice of lien." The application—which is located on the certificate of ownership or on a separate form prescribed by the director of revenue—requires the owner of the motor vehicle to provide information concerning the identity of the lienholder and the date of the security agreement. Mo.Rev.Stat. § 301.620(1). Because the application is physically located on the certificate of ownership, it also contains a description of the motor vehicle and the vehicle identification number. The owner then delivers the application to the director of revenue and pays a processing fee.[3] § 301.620(1). Similarly, the notice of lien requires the secured party to provide the identity of the owner and secured party, and a description of the motor vehicle, including the vehicle identification number. The secured party also delivers the notice of lien to the director of revenue. § 301.600(2). Thus, both sets of paper contain identical information and both sets of paper are sent to the director of revenue. The Court can discern no reason why one set of documents—the notice of lien—delivered to the director of revenue would be the only method of perfection when a second set of documents—the application—contains the same information and is also submitted to

---

**3.** The owner ostensibly controls the certificate of ownership and the law requires the owner to "immediately execute the application" so that the director of revenue may note the secured party's lien on the certificate of ownership. Mo.Rev.Stat. § 301.620(1). It would indeed be a rare for a creditor to relinquish control of the certificate of ownership and allow the purchaser to file the "application" and pay the processing fee on his or her own time. A failure by the owner to name the lienholder on the application for title is a class A misdemeanor. Mo.Rev.Stat. § 301.620(5).

the director of revenue.[4]

Second, elsewhere within Mo.Rev.Stat. §§ 301.600—301.660, repeated references are made to the certificate of ownership when addressing a lien on a motor vehicle. *See* § 301.600(3) (noting that for a lien to secure future advances both the notice of lien and certificate of ownership must state "subject to future advances"); § 301.600(4)(2)(a) (providing that a perfected security interest noted on a certificate of title in a foreign state is recognized in Missouri as a perfected security interest); § 301.600(4) (stating that when a vehicle is moved into Missouri the lien *may* be perfected by filing a notice of lien) (emphasis added); § 301.620(3) (noting that the owner shall ensure that a subordinate lienholder is recorded on the application for title); § 301.630(2) (allowing an assignee to perfect its interest and have the assignment noted on the certificate of ownership); § 301.640(1) (providing that upon the satisfaction of any lien the lienholder is required to release the lien or encumbrance on the "certificate or a separate document"). These repeated references detailing the importance of the certificate of ownership demonstrate that having an interest noted thereon remains an integral part of motor vehicle financing even after the 1999 amendments to § 301.600.

Third, a review of the legislative amendments to Missouri's motor vehicle lien perfection statutes reinforces the conclusion that the General Assembly did not intend to eradicate a creditor's right to perfect an interest by complying with the certificate of ownership laws. After the General Assembly added the "notice of lien" provisions in 1999, Chapter 301 was amended in 2000, 2001, and again in 2002. A.L.1999 H.B. 795, A.L.2000 S.B. 896, A.L.2001 H.B. 738 merged with S.B. 186, A.L.2002 H.B. 2008 merged with S.B. 895. In these amendments, the General Assembly never eliminated any of the references to the certificate of ownership provisions outlined above.

Fourth, the Trustee's argument that a notice of lien is the only method to perfect a security interest in a motor vehicle ignores the defining characteristic of certificate of ownership laws. A certificate of ownership serves the dual purpose of providing a method for theft prevention and secured financing. The added security of a certificate of ownership law distinguishes it from an Article 9 transaction, which was merely intended to ameliorate the harsh effects of non-possessory secret liens. Larry T. Bates, *Certificates of Title in Texas Under Revised Article 9*, 53 Baylor L.Rev. 735, 736 (2001). The Trustee's argument would effectively remove perfection from certificate of ownership laws and create a system more consistent with Article 9. Maintaining a lien on the certificate of ownership would only be a prophylactic measure to help deter theft. Because a thief cannot convey good title, the motor vehicle financier would have less incentive to ensure the owner complies with the certificate of title law knowing that its central filing with the director of revenue is proper notice to potential transferees.

 Fifth, the Court is mindful of the need to provide stability and certainty

---

4. It may well be that an application for a certificate of ownership constitutes substantial compliance with the requirements of the notice of lien statute, in which case the motor vehicle financier may be unwittingly perfected pursuant to both the notice of lien and certificate of ownership provisions. *See* Mo.Rev. Stat. § 301.600(2) (providing that "[a] notice of lien substantially complying with the requirements of this section is effective even though it contains minor errors which are not seriously misleading."). In light of our holding today, the Court does not find it necessary to address this issue.

when considering the established method of creating an enforceable security interest so that lenders are encouraged not to be overly cautious about extending credit. "Unless the legislature has plainly insisted on a technical prerequisite to the perfection of a security interest, courts should be slow to recognize such procedural obstacles." *In re Load–It, Inc.*, 860 F.2d 393, 396 (11th Cir.1988).

■ Accordingly, the Court finds that the notice of lien provision in Mo.Rev.Stat. § 301.600 is not the exclusive method of perfecting a security interest in a motor vehicle; rather, a creditor may perfect its interest by either filing a notice of lien or by having its interest noted on the certificate of ownership. The Court reaches this conclusion because: 1) in an apparent reaction to *Beasley*, the General Assembly amended Mo.Rev.Stat. § 301.600 in 1999 to give motor vehicle financiers greater flexibility to timely perfect their liens so that those liens would not be avoided by a trustee in bankruptcy as a preferential transfer; 2) a notice of lien statute serves as a shield to protect motor vehicle financiers against the inherent dangers of delay associated with the certificate of ownership method of perfection; 3) both the application for a certificate of ownership and the notice of lien contain the same information and both are delivered to the director of revenue; 4) Chapter 301 makes repeated references to the certificate of ownership when addressing the existence of motor vehicle liens; 5) none of the references to the certificate of ownership provisions outlined here was eliminated by subsequent amendments to Chapter 301; 6) reverting solely to a notice of lien method of perfection does not support the underlying philosophical differences between certificate of ownership laws and Article 9 of the Uniform Commercial Code; and 7) the Court is reluctant—considering the long history in Missouri of perfecting motor vehicle liens by having the interest noted on the certificate of ownership and the general purposes of a certificate of ownership law—to overturn a long-standing method of perfection in the absence of a clear and unambiguous indication by the General Assembly that a drastic change was intended.[5] Therefore, the Court concludes that the notice of lien provisions promulgated by the General Assembly provide a short-term fix to the problems associated with delays in having a lien noted on a motor vehicle certificate of ownership, and that the General Assembly never intended to eliminate the certificate of ownership as a method of lien perfection.

### III. ORDER

Therefore, it is

**ORDERED** that WFS Financial's Motion for Relief from the Automatic Stay against Jeremy Logan McFarlane and Heather Dawn McFarlane (Document # 9), Case No. 03–30194, is GRANTED. It is

**FURTHER ORDERED** that WFS Financial's Motion for Relief from the Automatic Stay against Stephen Edward Featherston (Document # 6), Case No. 03–30454, is GRANTED. It is

**FURTHER ORDERED** that Hyundai Motor Finance Company's Motion for Relief from the Automatic Stay against

---

5. In the absence of any legislative history in Missouri, the Court must attempt to divine the General Assembly's intention from the statutory language and the historical context in which statutes are written and amended. Such divination is not always easy. Considering the latent ambiguity in Mo Rev. Stat. §§ 301.600 and 301.620, the Trustee's arguments are certainly understandable. The Court hopes that future amendments to these provisions will provide greater clarity so that similar litigation may be avoided.

Charles Keith Rogers and Teresa Marie Rogers (Document # 7), Case No. 03–30548, is GRANTED. It is

**FURTHER ORDERED** that the Trustee's Objection to the enumerated Motions for Relief are OVERRULED.