In re Denise R. **BEASLEY**, Debtor.

Richard V. **FINK**, Chapter 13 Trustee, Plaintiff,

v.

**FIDELITY FINANCIAL SERVICES, INC.**, Defendant.

Bankruptcy No. 94–43096–2–13.

Adv. No. 95–4081.

United States Bankruptcy Court, W.D. Missouri.

July 14, 1995.

Michael P. Gaughan, Dysart Taylor Penner Lay & Lewandowski, P.C., Kansas City, MO, for Fidelity Financial Services, Inc.

Maureen Scully, Liberty, MO, for trustee.

### MEMORANDUM OPINION

FRANK W. KOGER, Chief Judge.

Debtor filed for relief under 11 U.S.C. Chapter 7 on November 18, 1994. At the § 341 meeting and from documentation and claims filed, the Chapter 7 Trustee determined that there was a problem with the alleged secured position of Fidelity Financial Services. For that reason the Trustee demanded that the debtor deliver possession of a 1994 Ford Probe which debtor had purchased and which debtor and Fidelity Financial Services thought was secured by a perfected lien in favor of said financial institution based on the monies advanced to debtor by said institution. Faced with the alternative of either turning the car over and letting the Trustee fight with Fidelity Financial Services or paying off the car in some fashion, debtor chose to convert to a Chapter 13. Debtor was then in effect a debtor in possession and the Chapter 13 Trustee engaged debtor's counsel to be his counsel to seek determination of the validity of Fidelity Financial's lien.

In this proceeding therefore, it would seem that debtor is basically somewhat of a stake holder and nothing more. If the Chapter 13

Trustee is successful and the lien is avoided, debtor by virtue of 11 U.S.C. § 1325(a)(4) has to pay the value of the vehicle (less exemption) into the Chapter 13 plan for the unsecured creditors. If, on the other hand, the lien of Fidelity Financial is determined to be impregnable, debtor has to pay Fidelity Financial the balance due on the lien, at least to the value of the collateral.

With this background then, the Court will recite the facts which are basically stipulated to by the parties. Debtor purchased the 1994 Probe on August 17, 1994, and delivered at that time to Fidelity Financial Services, Inc. her promissory note for $14,090.80 with interest at the rate of 20.85%. Debtor also delivered to Fidelity Financial a security agreement which has been introduced into evidence.

On September 7, 1994, or 21 days later, Fidelity mailed an application for Missouri Title and License to the Missouri Department of Revenue together with the requisite fee for the imposition of the lien on the face of the title. A copy of that application has also been submitted into evidence.

The so called "blue slip" which is the secured party's copy of the application was processed by the Department of Revenue and returned to Fidelity with a file date of September 23, 1994. However, a search of the records determined, and the parties have agreed, that the Department of Revenue received Fidelity's application for title and imposition of lien on September 12, 1994. Putting all the dates together what is obvious already to informed readers is that Fidelity filed the necessary paper work and same was received by the Department of Revenue 26 days after the date debtor signed the note and security agreement and delivered same to Fidelity. The date of the filing of the petition was 93 days after August 17, 1994, and therefore outside the magic preference period because, of course, there is no claim that Fidelity is an insider. Nevertheless, the date that Fidelity mailed the application to the Department of Revenue that would procure for it a secured position, the date that same was received by the Department of Revenue, the date that the "blue slip" was returned to Fidelity, were all within the magic 90 day preference period. Informed readers will also note, of course, that as of Octo-

ber 22 or October 24, 1994, whichever date one prefers, Congress had decreed that 11 U.S.C. § 547(c)(3) would allow a snap back of 20 days from the date of purchase to the date of perfection under the so called purchase money security interest exception to preference law. The State of Missouri, on the other hand, allows a secured party 30 days to perfect a purchase money security interest and provides that if a secured party does transmit the title application and lien imposition paper work to the Department of Revenue within 30 days of the purchase, the lien is valid as a purchase money security interest against all parties obtaining any interest within the time period between purchase and receipt of application. See Mo.Rev.Stat. § 301.600.2 (1994), which provides in relevant part:

> A lien or encumbrance on a motor vehicle or trailer is perfected by the delivery to the director of revenue of the existing certificate of ownership, if any, an application for a certificate of ownership containing the name and address of the lienholder and the date of his security agreement, and the required certificate of ownership fee. It is perfected as of the time of its creation if the delivery of the aforesaid to the director of revenue is completed within thirty days thereafter, otherwise as of the time of the delivery.

Thus, we find the problem. Is it the bankruptcy law of 20 days that controls, or is it the state law of 30 days that controls?

There is a split in authority among the courts that have considered this exact issue. In *In re Hamilton*, 892 F.2d 1230, 1234–35 (5th Cir.1990), and in *In re Loken*, 175 B.R. 56, 61 (9th Cir. BAP 1994), the Fifth Circuit Court of Appeals and the Ninth Circuit Bankruptcy Appellate Panel concluded that state law grace, or relation-back, periods are inapplicable for purposes of determining whether a transfer is preferential under section 547. *See also In re Walker*, 161 B.R. 484, 501 (Bankr.D. Idaho 1993), *aff'd*, 178 B.R. 497 (D.Idaho 1994); *In re Holloway*, 132 B.R. 771, 773 (Bankr.N.D.Okla.1991); *In re Holder*, 94 B.R. 395, 398 (Bankr.M.D.N.C. 1988), *aff'd*, 94 B.R. 394 (M.D.N.C.1988), *aff'd*, 892 F.2d 29 (4th Cir.1989) (issue of

applicability of state law relation-back period not appealed to the circuit court); *In re Scoviac,* 74 B.R. 635, 637–38 (Bankr.N.D.Fla. 1987); *In re Murray,* 27 B.R. 445, 451 (Bankr.M.D.Tenn.1983).

On the other hand, in *In re Hesser,* 984 F.2d 345, 348–49 (10th Cir.1993), and in *In re Busenlehner,* 918 F.2d 928, 930–31 (11th Cir. 1990), *cert. denied, Moister v. General Motors Acceptance Corp.,* 500 U.S. 949, 111 S.Ct. 2251, 114 L.Ed.2d 492 (1991), the Tenth Circuit Court of Appeals and Eleventh Circuit Court of Appeals concluded that state law relation-back periods are applicable under a section 547 analysis. *See also In re Power,* 133 B.R. 242, 244 (Bankr.N.D.Okla. 1991); *In re Burnette,* 14 B.R. 795, 801 (Bankr.E.D.Tenn.1981).

This Court is persuaded that the reasoning of the appellate courts in *Hamilton* and *Loken* and other courts which have determined that state law relation-back periods are inapplicable when deciding whether a preferential transfer has occurred is correct. The court in *Loken* discussed the split in authority and opined:

Looking at the plain language of Section 547(e)(1), taken as a whole, we find that an ambiguity does not exist. The term "perfected" must be viewed in the context of the rest of the Section and with regard for the usual usage of that term. Section 547(e)(1) states that a transfer is perfected when a creditor "cannot" acquire a superior interest. This Section directs courts to determine when a judicial lienholder is not able to obtain a position superior to that of the transferee in question. *See In re Lane,* 980 F.2d 601, 605 (9th Cir.1992) (applying Section 547(e)(1)(A)—the definition of transfer is "unambiguous;" a transfer is perfected when a subsequent purchaser cannot acquire a superior interest.) If a judicial lienholder could still obtain superior rights, then the transfer has not been perfected such that the lien holder "cannot" obtain superior rights. Essentially, under Section 547(e)(1), the court must determine the moment in time when a judicial lien creditor is barred from obtaining superior rights. This is a natural reading of the complete Code Section.

The courts that have reached a different conclusion have taken the word "perfected" out of the context of the remaining words of the statute. We hold that a creditor on a simple contract is barred from acquiring a judicial lien superior to the interest of the transferee when the transferee takes the last step required by state law to perfect its security interest. Until that last step is taken, other creditors could potentially obtain superior rights. Until this last step, it is not possible to say that other creditors "cannot" obtain superior rights.

This interpretation, that the term "perfected" refers to that single date, or moment in time, when the state perfection statute is satisfied, is also consistent with the general usage of the term. *See In re Holloway, supra,* 132 B.R. at 774 ("[I]n the real world perfection is actually accomplished on a particular date by doing a particular act."). A perfect example is the Oregon statute at issue here. The Oregon statute requires that an application for notation of the interest on the certificate of title be sent to the DMV. The application must be accompanied by certain documentation. The application is marked when it is received by the DMV. The final act required by the Oregon statute is the submission of a completed application and supporting documentation. If everything is in order, "the security interest is *perfected* as of the date marked by the [DMV] on the application." O.R.S. § 803.097(3) (emphasis added). The last act required by Oregon law is the submission of a completed application and supporting documentation to the DMV. Once it is confirmed that this has been done properly, Oregon treats this last required act as the moment the security interest is perfected. This is simply how the term perfected is used in common usage.

Since this issue has produced such divergent views we also will look at the history of this Code section and the legislative intent behind it. The first thing we note is that Congress intended to harmonize the preference statute with the Uniform Commercial Code.

[T]he adoption of the Uniform Commercial Code radically altered the terminology of secured transactions, and the courts have applied the new terminology to the preference sections, which uses certain of the same words as the Uniform Commercial Code but in different senses and with different meanings. It is time to bring the two statutes into harmony, and H.R. 8200 does that by adopting the more modern terminology of the Uniform Commercial Code, and providing for specific treatment of transfers by the Code.

H.Rep. No. 595, 95th Cong., 1st Sess. 179 (footnotes deleted). This statement is consistent with our holding that Section 547(e)(1) must be read in accordance with general commercial usage.

The Bankruptcy Act ("Act") set a twenty-one day time limit for perfection of transfers. Under Section 60(a)(7) of the Act, the time period would be shorter if state law provided for less time to perfect. However, while state law might provide for less time, Section 60(a)(7) clearly prohibited the use of a state statute to expand the twenty-one days maximum time limit. Congress's reason for changing the timing of Section 60(a)(7) to the ten day time period of Code Section 547(e)(2) is clear. Congress made the change to create a uniform rule throughout the country and it did not intend for state grace periods to be relevant under Section 547. *In re Burnette, supra,* 14 B.R. at 801. Congress set the grace period at ten days to correspond with the grace period provided under the Uniform Commercial Code. *See In re Walker, supra,* 161 B.R. at 495 (quoting White and Summers, *Uniform Commercial Code* § 25–7, 447–48 (3d ed.1988)). *See also Burnette, supra,* 14 B.R. at 800. Congress could have provided that each state's own version of Uniform Commercial Code Section 9–310(2) would be applicable. Then states, such as Oregon, could have adopted changes as they saw fit. However, Congress did not do this. Instead, it created one uniform grace period of ten days.

We also take note of Congress's enactment of the Bankruptcy Reform Act of 1994, which was signed into law on October 22, 1994. The Reform Act now allows a creditor twenty days to perfect its purchase money security interest while still qualifying for the enabling loan exception found in Section 547(c)(3). By this change, Congress acknowledged that states were enacting grace periods greater than ten days for such security interests. Congress could have deferred completely to the states by incorporating each state's own timing into the Code. Instead, it chose to continue having the Code itself dictate the applicable grace period. Furthermore, Congress did not amend Section 547(e)(1), which provides the definition for "perfection" as used in Section 547.

Even under the Reform Act then, if a creditor perfects its interest more than ten days after the transfer is effective between the parties, the transfer will be deemed made on the date of perfection, and a preference may therefore exist. If it is perfected within ten days, the transfer is deemed made as of the day it became effective between the parties. Under such circumstances, there will have been no transfer on account of an antecedent debt, and hence, no preference. The only difference under the new law is that lienholders asserting purchase money security interests, who perfect their interest within twenty days of the debtor taking possession of the property in question, may now be able to interpose Section 547(c)(3) as a defense to a preference action. For all purposes of Section 547 though, be it to determine if there was a transfer on account of an antecedent debt or if the enabling loan exception applies, perfection is still determined pursuant to Section 547(e), and is still determined without any reference to state grace periods.

The Panel now applies this law to the facts at hand. The parties agree that Romania's application for a notation of the security interest on the certificate of title was marked October 31, 1991. Clearly then, since there is no other mark on it, the application was received by the DMV on that date, it contained all the required information and it was accompanied by all

necessary documentation. The security interest was perfected on October 31, 1991. *See* O.R.S. 803.097(3). On that date, Romania cut off any possibility that a judicial lien creditor could obtain superior rights in the collateral. The relation back effect of O.R.S. § 79.3010(2) is inapplicable.

. . . .

The plain language of Section 547(e)(2) provides that a secured creditor will have a ten day grace period for perfecting its security interest. Pursuant to Section 547(e)(1), courts must look to state law to determine the moment in time in which the last step is taken to perfect a security interest. Varying grace periods provided for under state law are irrelevant. If the last necessary act was done within the ten day period of Section 547(e)(2)(A), the transfer will have been made when it became effective between the parties. If it is made after the ten day period, it will have been made when perfected under Section 547(e)(2)(B).

The security interest was effective between Loken and Romania on October 19, 1991. The DMV stamped Romania's application as received on October 31, 1991. The security interest was perfected on that date. This was beyond the ten day grace period allowed. Therefore, under Section 547(e)(2)(B), the transfer of the security interest is treated as made on October 31, 1991, and not October 19, 1991. Consequently, the transfer was made on account of an antecedent debt under Section 547(b)(2) and that essential element of the preference claim was met.

*Loken,* 175 B.R. at 61–64.

The recent amendment to section 547(c)(3)(B), which extended the time period in which a lender may perfect its security interest from 10 to 20 days after the debtor receives possession of the property, is further support for the Court's conclusion that state law relation-back periods do not apply.

As astutely noted by the bankruptcy court in *Walker,* 161 B.R. at 499, n. 18:

Interestingly, Senate Bill No. 540, a comprehensive set of amendments to the Bankruptcy Code is currently under consideration in Congress. One such change proposed by the bill would be to extend the Section 547(c)(3) grace period to 20 days from the present 10 days because most states have now adopted longer periods for perfection of purchase money security interests. If Defendant's position is correct, and state relation back statutes are already operative under the statute, it is curious that some in Congress feel the need for an amendment to the Code. S.Rep. No. 103–168, 103d Cong. (1993).

*See also* H.R.Rep. 103–834, 103d Cong., 2d Sess. 20 (Oct. 4, 1994); 140 Cong.Rec. H10767 (Oct. 4, 1994), *reprinted in* Norton Bankruptcy Code Pamphlet p. 596 (1994–95 ed.) (The amendment to section 547(c)(3)(B) "conforms bankruptcy law practices to most States' practice by granting purchase-money security lenders a 20–day period in which to perfect their security interest.").[1]

Here, there is no dispute that Beasley received possession of the 1994 Ford Probe on August 17, 1994. Pursuant to Missouri law, the security interest was perfected at the earliest on September 7, 1994, or 21 days later, when Fidelity Financial mailed an application for Missouri Title and License noting the lien together with the requisite fee to the Missouri Department of Revenue. *See In re Schalk,* 592 F.2d 993, 996–97 (8th Cir. 1979) (applying Missouri law) (The security interest is perfected at the earliest when the lender sends an application for a certificate of ownership noting the lien with the required fee to the Missouri Department of Revenue.); Mo.Rev.Stat. § 301.600.2 (1994). The 30–day relation-back period prescribed in Mo.Rev.Stat. § 301.600.2 is inapplicable. Fidelity Financial perfected its lien beyond the 20–day relation-back period provided in

---

**1.** The Court has read Judge Federman's well written opinion in *In re Chambers,* 125 B.R. 788 (Bankr.W.D.Mo.1991). In that case, the lender never sent the application for Missouri Title or the filing fee to the Missouri Department of Revenue. The lender was never shown as a lienholder on the title of the vehicle. When acknowl-

edging that the lien was not perfected, Judge Federman noted that the lender failed to perfect the lien in accordance with the 30–day period prescribed in Mo.Rev.Stat. § 301.600, however, Judge Federman was not required to and did not address the issue presently before this Court.

section 547(c)(3)(B). Fidelity Financial's security interest in the 1994 Ford Probe is deemed avoided pursuant to section 547(b). The Court will set aside Fidelity Financial's lien as a voidable preference.

### CONCLUSION

Based on the above discussion, the Chapter 13 Trustee's request for relief in his complaint is GRANTED. Fidelity Financial Services's lien is set aside as a voidable preference.

The foregoing Memorandum Opinion constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.