# FIDELITY FINANCIAL SERVICES, INC. *v.*
# FINK, TRUSTEE

No. 96–1370.   Argued November 3, 1997—Decided January 13, 1998

SOUTER, J., delivered the opinion for a unanimous Court.

*Michael P. Gaughen* argued the cause and filed a brief for petitioner.

*Richard V. Fink,* respondent, *pro se,* argued the cause and filed a brief.*

JUSTICE SOUTER delivered the opinion of the Court.

Although certain transfers made before the filing of a petition in bankruptcy may be avoided as impermissibly preferential, a trustee may not so displace a security interest for a loan used to acquire the encumbered property if, among other things, the security interest is "perfected on or before 20 days after the debtor receives possession of such property." 11 U. S. C. § 547(c)(3)(B). The question in this case is whether a creditor may invoke this "enabling loan" exception if it performs the acts necessary to perfect its security interest more than 20 days after the debtor receives the property, but within a relation-back or grace period provided by the otherwise applicable state law. We answer no and hold that a transfer of a security interest is "perfected" under § 547(c)(3)(B) on the date that the secured party has

---

*James A. Pardo, Jr.,* filed a brief for the American Automobile Manufacturers Association et al. as *amici curiae* urging reversal.

completed the steps necessary to perfect its interest, so that a creditor may invoke the enabling loan exception only by satisfying state-law perfection requirements within the 20-day period provided by the federal statute.

## I

On August 17, 1994, Diane Beasley purchased a 1994 Ford and gave petitioner, Fidelity Financial Services, Inc., a promissory note for the purchase price, secured by the new car. Twenty-one days later, on September 7, 1994, Fidelity mailed the application necessary to perfect its security interest addressed to the Missouri Department of Revenue. See Mo. Rev. Stat. § 301.600(2) (1994).[1]

Two months after that, Beasley sought relief under Chapter 7 of the Bankruptcy Code. After the proceeding had been converted to one under Chapter 13, respondent, Richard V. Fink, the trustee of Beasley's bankruptcy estate, moved to set aside Fidelity's security interest. He argued that the lien was a voidable preference, the enabling loan exception being inapposite because Fidelity had failed to perfect its interest within 20 days after Beasley received the car. Fidelity responded that Missouri law treats a lien on a motor vehicle as having been "perfected" on the date of its creation (in this case, within the 20-day period), if the creditor files the necessary documents within 30 days after the debtor takes possession. Mo. Rev. Stat. § 301.600(2) (1994).

The Bankruptcy Court set aside the lien as a voidable preference, holding that Missouri's relation-back provision

---

[1] Whether the mailing was sufficient to perfect the interest is an issue of state law not raised by this case. In speaking below of acts necessary to perfect a security interest under state law, we mean whatever acts must be done to effect perfection under the terms of the applicable state statute, whether those be acts of a creditor or acts of a governmental employee delivering or responding to a creditor's application. As will be seen, the time within which those acts must be done is governed by federal, not state, law, when the issue is the voidability of a preference under the Bankruptcy Code.

could not extend the 20-day perfection period imposed by § 547(c)(3)(B). *In re Beasley*, 183 B. R. 857 (Bkrtcy. Ct. WD Mo. 1995). Fidelity appealed to the United States District Court for the Western District of Missouri, which affirmed on substantially the same grounds, as did the Court of Appeals for the Eighth Circuit, holding a transfer to be perfected "when the transferee takes the last step required by state law to perfect its security interest." 102 F. 3d 334, 335 (1996) *(per curiam)* (internal quotation marks omitted).

We granted certiorari, 520 U. S. 1209 (1997), to resolve a conflict among the Circuits over the question when a transfer is "perfected" under § 547(c)(3)(B).[2] We affirm.

## II

Without regard to whether Fidelity's lien is a preference under § 547(b), Fink cannot avoid the lien if it falls within the enabling loan exception of § 547(c)(3), one requirement of which is that the transfer of the interest securing the lien be "perfected on or before 20 days after the debtor receives possession." 11 U. S. C. § 547(c)(3)(B). Perfection turns on the definition provided by § 547(e)(1)(B), that "a transfer of . . . property other than real property is perfected when a creditor on a simple contract cannot acquire a judicial lien that is superior to the interest of the transferee."

Like the Courts of Appeals that have adopted its position, see n. 2, *supra*, Fidelity sees in subsection (c)(3)(B) not only a federal guarantee that a creditor will have 20 days to act, but also a reflection of state law that deems perfection within

---

[2] Compare *In re Locklin*, 101 F. 3d 435, 442 (CA5 1996) (holding that § 547(c)(3)(B) perfection period prevails over a longer grace period provided by state law); *In re Walker*, 77 F. 3d 322, 323–324 (CA9 1996) (same); and *In re Hamilton*, 892 F. 2d 1230, 1234–1235 (CA5 1990) (same), with *In re Hesser*, 984 F. 2d 345, 348–349 (CA10 1993) (holding that a transfer is perfected under § 547(c)(3)(B) as of the date that the creditor's lien has priority under state law), and *In re Busenlehner*, 918 F. 2d 928, 930–931 (CA11 1990) (same), cert. denied *sub nom. Moister* v. *General Motors Acceptance Corp.*, 500 U. S. 949 (1991).

a statutory grace or relation-back period to be perfection as of the creation of the underlying security interest. Under Missouri law, for example, a "lien or encumbrance on a motor vehicle . . . is perfected by the delivery [of specified documents] to the director of revenue," Mo. Rev. Stat. § 301.600(2) (1994), but the date of the lien's perfection is "as of the time of its creation if the delivery of the aforesaid to the director of revenue is completed within thirty days thereafter, otherwise as of the time of the delivery." *Ibid.* Thus, Fidelity contends that although it delivered the required documents more than 20 days after Beasley received the car, its lien must be treated as perfected on the day of its creation because it delivered the papers within the 30 days allowed by state law to qualify for the relation-back advantage. If this is sound reasoning, Fidelity's lien was perfected on August 17, 1994, the very day that Beasley drove away in her Ford, and Fidelity may invoke § 547(c)(3)'s enabling loan exception.[3]

The assumption that the term "perfected" as used in subsection (c)(3)(B) and defined in subsection (e)(1)(B) may refer to the relation-back date is not to be made so easily, however. It is quite certain, to begin with, that in the relevant context Congress sometimes used the word "perfection" to mean the legal conclusion that for such purposes as calculating priorities perfection of a lien should be treated as if it had occurred on a particular date, and sometimes used it to refer to the acts necessary to support that conclusion. Section 546(b)(1)(A) speaks of state laws that permit "perfection . . . to be effective . . . before the date of perfection." 11 U. S. C.

---

[3] As Fidelity suggested in passing at oral argument, see Tr. of Oral Arg. 22–23, its reading of the term "perfected" in § 547(e)(1)(B) would carry another consequence. If the lien were "perfected" under that provision as of the date of its creation, the transfer would presumably be treated as having taken place on that date, 11 U. S. C. § 547(e)(2)(A), outside the 90-day preference period set forth in § 547(b)(4)(A), and would not have been a voidable preference at all.

§ 546(b)(1)(A). The distinction implicit in speaking of "perfection" antecedent to the "date of perfection" shows that Congress was thinking about the difference between the legal conclusion that may be entailed by applying a relation-back rule and, on the other hand, the acts taken to trigger an application of the rule.

Knowing that Congress understood "perfection" in these two different senses, one can see how Fidelity's construction of § 547(e)(1)(B) is a poor fit with the text. Although Fidelity and two Courts of Appeals have thought this provision means that a transfer is perfected as of whatever date an enabling creditor could claim in a priority fight with a contract creditor armed with a judicial lien, the statute does not speak in such terms. Rather, it says that a transfer is perfected "when" a contract creditor "cannot acquire" a superior lien. "[W]hen" and "cannot acquire" are ostensibly straightforward references to time and action in the real world, not tipoffs (like the terms "as if" and "deemed") that the clock is being turned back in some legal universe. A creditor "can" acquire such a lien at any time until the secured party performs the acts sufficient to perfect its interest. Such a lien would, of course, lose its priority if, during the relation-back period, the secured party performed those acts; such a possibility does not mean that a contract creditor "cannot" acquire such a lien, however, but merely that its superiority may be fleeting. Not until the secured party actually performs the final act that will perfect its interest can other creditors be foreclosed conclusively from obtaining a superior lien. It is only then that they "cannot" acquire such a lien. Thus, the terms of § 547(e)(1)(B) apparently imply that a transfer is "perfected" only when the secured party has done all the acts required to perfect its interest, not at the moment as of which state law may retroactively deem that perfection effective.

A variety of considerations support this conclusion. First, a related provision of the Bankruptcy Code raises a

negative implication to the effect that Congress did not intend state relation-back provisions or grace periods to control a trustee's power to avoid preferences. Section 546 of the Code puts certain limits on the avoidance powers set forth elsewhere, as in the provision of §546(b)(1)(A) that the "rights and powers of a trustee under sections 544, 545, and 549 of this title are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." Not only does the series skip from §545 to §549, but the omission of §547 becomes all the more pointed when read against the other subsections of §546, all of which refer explicitly to powers and proceedings under §547. See 11 U. S. C. §§546(a), (c)–(g). So, it is hard to resist the implication that Congress quite specifically intended a trustee's power to avoid prepetition preferences to prevail over any state rules permitting relation back.

There is further support for this reading in the circumstances of the 1994 amendment to the Bankruptcy Code that extended the perfection period under §547(c)(3)(B) from 10 to 20 days. See Bankruptcy Reform Act of 1994, §203(1), Pub. L. 103–394, 108 Stat. 4122. At the time this legislation was passed, most States had some version of Article 9–301(2) of the Uniform Commercial Code, which provides that

> "[i]f the secured party files with respect to a purchase money security interest before or within ten days after the debtor receives possession of the collateral, he takes priority over the rights of a transferee in bulk or of a lien creditor which arise between the time the security interest attaches and the time of filing." Uniform Commercial Code §9–301(2), 3A U. L. A. 10 (1992).

Forty-two States had adopted modifications extending the grace period to 20 days or more after the debtor's first possession of the collateral. See Uniform Commercial Code §9–301, 3A U. L. A. 10, 14–15 (1992 and Supp. 1997); Cal.

Com. Code Ann. § 9301(2) (West Supp. 1997); R. I. Gen. Laws § 6A–9–301(2) (1992).

Under Fidelity's view of the way § 547(c)(3) acts together with state law, a creditor in any of those States could have perfected its security interest between the 10th and the 20th day and still have complied with the 10-day deadline in the pre-1994 version of the Bankruptcy Code. Indeed, on Fidelity's view, the only States in which antecedent perfection would not have been recognized under the old federal 10-day period would have been States with no relation-back period at all (of which there was none), or States in which relation back went only to the 11th (or a later) day after creation (of which, it is not surprising to learn, there also was none), or States in which the time for acting under the relation-back rule was less than 20 days (of which there were only eight, plus Guam and the District of Columbia). If Congress had shared Fidelity's view of the federal 10-day provision, then the 1994 amendment would have accomplished very little, extending the period only in those few States that lacked a 20-day grace period. And, of course, it is hard to understand why Congress would have wanted to do that. The change would not have brought uniformity to federal bankruptcy practice, for on Fidelity's view a State could have chosen a longer period (and, in the context of motor vehicles, at least some have done so, see, e. g., W. Va. Code § 17A–4A–4(a) (1996) (providing 60-day period)). The net effect of the 1994 amendment would thus have been merely to benefit a class of creditors in only eight States, Guam, and the District of Columbia, jurisdictions which could have looked out for their own creditors if they had chosen to do so. It is not easy to imagine that Congress meant to accomplish nothing more, and nothing uniform, by its effort.

Driven to the last ditch, Fidelity relies on an isolated piece of legislative history. On the floor of the Senate one day in April 1994, during consideration of the Bankruptcy Reform Act of 1993, a bill which was never enacted but which had a

provision identical to the 1994 amendment that extended the §547(c)(3)(B) perfection period to 20 days, Senators Heflin and Sasser appeared to address the issue now before us.[4] During their colloquy, the Senators agreed that "although there is no statutory language to codify [the Eleventh Circuit's decision in *In re Busenlehner* and the Tenth Circuit's decision in *In re Hesser*], they are consistent with Federal bankruptcy law." 140 Cong. Rec. 8035 (1994) (remarks of Sen. Sasser). Senator Heflin thought it "appropriate at this time for the Senate to state its intent to confirm the interpretations of these circuits." *Ibid.* Fidelity takes this exchange as indicating that in passing the 1994 amendment Congress meant to enact the holdings of the Tenth and Eleventh Circuits that the term "perfected" in §547(c)(3)(B) may refer to the conclusion provided by a relation-back rule, not only to the creditor's act of filing.

But the colloquy supports no such argument. Senator Heflin began it by describing the enabling loan exception and noting that the proposed amendment would extend the "[f]ederal time period from 10 to 20 days." *Ibid.* Senator Sasser responded that he thought it "advisable to clarify a related issue that has caused unnecessary litigation throughout the country." *Ibid.* Senator Sasser later stated that he was "[c]larifying that 'relation back' statutes are consistent with the Federal law." *Ibid.* These remarks reflect the Senators' understanding that they were not discussing the effect of any legislative proposal before them. Indeed, as we have seen, "perfection" is defined elsewhere and the Senate was not addressing the definition provision. The Senators were simply using the occasion to offer their own views on existing law, a conclusion underscored by Senator Sasser's observation that "there is no statutory language to codify these court cases." *Ibid.*

---

[4] We say "appeared" because the colloquy is not free of ambiguity. See 140 Cong. Rec. 8035 (1994). For the sake of argument, we treat it in the light most favorable to Fidelity.

Whatever weight some Members of this Court might accord to floor statements about proposals actually under consideration, remarks that purport to clarify "related" areas of the law can have little persuasive force, and in this case none at all. For the Senators' remarks were not only at odds with the governing text but also with the current of the broader statutory history of the preference provisions, which persuasively suggests that Congress intended § 547(c)(3)(B) to establish a uniform federal perfection period immune to alteration by state laws permitting relation back. The former version of the preference provisions, § 60 of the previous Bankruptcy Act, referred explicitly to state law in determining when a transfer occurred. It first provided a general rule that a transfer of an interest in personal property occurred "when it became so far perfected that no subsequent lien upon such property obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee." 11 U. S. C. § 96(a)(2) (1964 ed.). But it then subjected this general rule to the exceptions that

> "[w]here (A) the applicable law specifies a stated period of time of not more than twenty-one days after the transfer within which recording, delivery, or some other act is required, and compliance therewith is had within such stated period of time; or where (B) the applicable law specifies no such stated period of time or where such stated period of time is more than twenty-one days, and compliance therewith is had within twenty-one days after the transfer, the transfer shall be deemed to be made or suffered at the time of the transfer." § 96(a)(7)(I).

Thus, a transfer was deemed to have occurred on the date of the transaction that gave rise to it, not on the later date of "recording, delivery, or . . . other act," so long as the creditor had complied with state relation-back law within 21 days. But even this former version of the Act, which explicitly

looked to state-law rules to determine the effective date of transfer, did not allow those rules to extend the creditor's opportunity to act beyond the uniform outer time limit that it provided.  In light of this history, we see no basis to say that subsequent amendments removing references to state-law options had the counterintuitive effect of deferring to such options even beyond what the old law would have done.

In short, the text, structure, and history of the preference provisions lead to the understanding that a creditor may invoke the enabling loan exception of § 547(c)(3) only by acting to perfect its security interest within 20 days after the debtor takes possession of its property.

*      *      *

Accordingly, we affirm the judgment of the Court of Appeals for the Eighth Circuit.

*It is so ordered.*