**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: DAVID DOUGLAS TAYLOR;
LINDA SUE TAYLOR,

*Debtors,*

USAA FEDERAL SAVINGS BANK,

*Appellant,*

v.

DON THACKER, Trustee,

*Appellee.*

No. 08-60033

BAP No.
WW-07-1313-
MkMoD

ORDER AND
OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Montali, Markell, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
August 3, 2009—Seattle, Washington

Filed March 22, 2010

Before: Harry Pregerson, John T. Noonan and Carlos T. Bea,
Circuit Judges.

Opinion by Judge Bea

## COUNSEL

Lawrence Gary Reinhold, Weinstein & Riley, P.S., Akron, Ohio, for the defendant-appellant.

Thomas W. Stilley, Sussman Shank LLP, Portland, Oregon, for the plaintiff-appellee.

## ORDER

The opinion filed on February 26, 2010, is withdrawn. A replacement opinion will be filed concurrently with this order.

## OPINION

BEA, Circuit Judge:

In 2005, David and Linda Taylor bought a Toyota Camry right before declaring bankruptcy. Their lender, USAA Federal Savings Bank ("USAA"), procured from the Taylors a security interest in the car as collateral for the loan. USAA

perfected its security interest 21 days after the Taylors purchased their car; USAA's perfection was timely under Idaho law, but one day late under federal bankruptcy provisions.[1] The Taylors' conveyance of a security interest to USAA was then avoidable by the Taylors' bankruptcy trustee, as a preferential transfer.[2] The trustee moved the bankruptcy court to avoid the transfer and the court granted the motion.

---

[1] When a debtor declares bankruptcy before paying off his debt, the creditor must "perfect" a security interest to enforce his interest and to preserve the priority of his claim. Perfection usually requires the creditor file documents with a State to prove when the creditor received the security interest. Under Idaho law, a creditor perfects a security interest in a vehicle by filing a "properly completed title application and all required supporting documents with the department [of transportation] or an agent of the department." Idaho Code § 49-510(1). The application for certificate of title includes "a full description of the vehicle, including whether the vehicle is new or used, together with a statement of the applicant's title and of any liens or encumbrances upon the vehicle, and the name and address of the person to whom the certificate of title shall be delivered, and any other information as the department may require." Idaho Code § 49-504(1). Perfected security interests shall "take priority according to the order in which the same are noted upon the certificate of title or entered into the electronic records of the department." Idaho Code § 49-510(3). Under the federal Bankruptcy Code, a security interest is perfected when the creditor has satisfied the requirements of perfection under state law. *See* 11 U.S.C. § 547(c)(3)(B), *Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211, 214 (1998) (holding a security interest is perfected for federal bankruptcy purposes if the creditor satisfies the requirements for perfection under state law).

Under Idaho law, a creditor must file the title application and all supporting documents within 30 days after the delivery of the vehicle. Idaho Code § 49-504. At the time the Taylors purchased their vehicle, the federal Bankruptcy Code required creditors to perfect their security interests within 20 days. 11 U.S.C. § 547(c) (discussed *infra* note 6).

[2] Preferential transfers are usually transfers of a debtor's interest in property to a creditor on the eve of the debtor's bankruptcy. These transfers are preferential because the insolvent debtor chooses which creditor to repay instead of following the order of priority established by the relevant bankruptcy laws. *See* 11 U.S.C. § 547.

We address a recurring question in many bankruptcies: What should be the remedy when a court holds that a security interest is avoidable as a preferential transfer? When a bankruptcy court avoids a preferential transfer, it may award the bankrupt estate either the actual transferred property or the value of the transferred property. 11 U.S.C. § 550(a). Here, the bankruptcy court declined to award the estate the transferred property: the security interest. If it had done so, then the bankruptcy trustee could simply have canceled the security interest, thus converting the auto loan into an unsecured debt owed to USAA. Instead, the bankruptcy court opted to award the estate the "value" of the security interest. Hence, because the bankruptcy court left the original transaction untouched, USAA kept its valid, enforceable secured interest in the Camry. But, the bankruptcy court also awarded the Taylors' bankruptcy estate something more. It was that decision—to award the estate the value of the security interest by means of a new forced loan—that led the bankruptcy court down the proverbial rabbit hole.

Once the bankruptcy court decided to award the value of the security interest, it faced the question: What is the value of a security interest, once the security interest is separated from its underlying loan? The bankruptcy court determined that the value of the security interest was the full value of the initial *loan*. Therefore, the bankruptcy court ordered USAA to loan the estate $18,020 plus interest; this amount was in addition to the $18,020 USAA initially loaned the Taylors when they purchased the Camry. Upon payment of the additional $18,020, USAA became entitled to file a non-priority unsecured claim for the additional amount of $18,020 plus interest, which was loaned under the bankruptcy court's order. The bankruptcy court's determination of the value of the security interest was clearly erroneous. We agree that the security interest may have had *some* value greater than zero; there is, however, no evidence in this record to support the bankruptcy court's finding that the value of the security interest equaled

the amount of the original $18,020 loan at the time USAA perfected its security interest.

Furthermore, because the value of USAA's security interest is not readily ascertainable, the bankruptcy court erred when it awarded the estate an estimate of that value instead of the transferred property—the security interest. Therefore, we reverse the bankruptcy court's decision and remand with instructions for the bankruptcy court to declare USAA's security interest void. The ownership of the Camry will not be subject to the lien created by the security interest. USAA will retain an unsecured claim against the estate for $18,020, the value of the loan. For reasons discussed below, we also remand to the bankruptcy court to determine whether USAA must return the payments it received from the Taylors, and if so, to whom.

## I.   Factual Background

### A.   The Purchase

On August 30, 2005, David and Linda Taylor, a married couple, purchased and took possession of a 2006 Toyota Camry from Gresham Toyota, Inc. ("Gresham"), a dealership in Portland, Oregon. The Taylors purchased the car for $19,500.

USAA loaned the Taylors $18,020; the Taylors in turn paid the $18,020 to Gresham. The amount of the loan was equal to the purchase price of the car less the agreed trade-in value of the Taylors' 1992 Lincoln Town Car, which the Taylors sold to Gresham as part of the purchase of the Camry. In September 2005, the Taylors began to make monthly payments on their loan to USAA.[3]

---

[3]The record does not show the amount of the monthly payment. Following the Taylors' petition in bankruptcy, they arranged to continue to pay the loan from their post-petition income that was not part of the estate; therefore, they did not default. It is not clear on the record before us if any payments came from the estate itself.

The Taylors, as part of the loan agreement, granted USAA a "purchase money security interest" in the car.[4] Under the Bankruptcy Code, a security interest is a lien created by an agreement (as opposed to by statute). 11 U.S.C. § 101(51).[5] A "lien . . . means [a] charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37).

To satisfy pre-existing debts, a trustee can avoid transfers that take place within the 90 days before bankruptcy is filed. 11 U.S.C. § 547(b). There is an exception to this rule, however, for creditors who perfect a security interest within 20 days after a transfer for new value. 11 U.S.C. § 547(c)(3). A security interest is perfected when the creditor has satisfied the requirements of perfection under state law. *Fidelity Financial Services, Inc. v. Fink,* 522 U.S. 211, 214 (1998). Thus, USAA had to satisfy all the requirements set out in Idaho Code Sections 28-9-310 through 28-9-316 within 20 days after the Taylors took possession of the Camry. Idaho Code 29-9-308(a); 11 U.S.C. § 547(c). USAA, however, made the crucial mistake of being one day late in perfecting its security interest. Accordingly, USAA failed to exempt the transfer from being avoidable under the Bankruptcy Code.

USAA failed to perfect the security interest within 20 days

---

[4]A purchase-money security interest is: "A security interest that is created when a buyer uses the lender's money to make the purchase and immediately gives the lender security by using the purchased property as collateral (UCC § 9-103); a security interest that is either (1) taken or retained by the seller of the collateral to secure all or part of its price or (2) taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if that value is in fact so used. If a buyer's purchase of a boat, for example, is financed by a bank that loans the amount of the purchase price, the bank's security interest in the boat that secures the loan is a purchase-money security interest." BLACK'S LAW DICTIONARY (9th ed. 2009).

[5]All future references to "Section" or "§" are to the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, unless otherwise noted.

because it filed its initial application for title without a signed affidavit of inspection, as required under Idaho law. *See* Idaho Code Ann. § 49-510. On September 20, 2005, an inspection officer from the Idaho Transportation Department inspected the car and signed an affidavit of inspection. The same day, an Application for Certificate of Title and the affidavit of inspection were filed with the Idaho Transportation Department. USAA's security interest was thus perfected under Idaho law only on September 20, 2005—21 days after the Taylors took possession of the car on August 30, 2005. Despite the fact that USAA's security interest was perfected under state law, the bankruptcy trustee could still avoid the transfer of the security interest because USAA failed to meet the federal 20-day perfection requirement under § 547(c)(3).[6]

## B.   The Bankruptcy

On September 28, 2005, the Taylors filed a voluntary petition in bankruptcy under Chapter 7. A Chapter 7 bankruptcy filing transfers title to the debtors' nonexempt assets to a court-appointed trustee, who endeavors to manage the assets in a manner that will satisfy the creditors' claims. 11 U.S.C. §§ 701, 704. The bankruptcy court appointed Don Thacker as the Taylors' bankruptcy trustee.

On February 23, 2007, Thacker filed suit against USAA to avoid the transfer of the security interest under 11 U.S.C.

---

[6]Before the bankruptcy court, USAA contended it perfected its security interest when it filed its application with the Idaho Transportation Department on September 15, 2005 because Idaho permitted it a grace period of an additional 20 days. *See* Idaho Code 49-510. The bankruptcy court held the state law grace period did not apply to federal bankruptcy proceedings regarding avoidance of a preferential transfer under § 547. *See Fidelity Financial Services*, 522 U.S. at 221. The BAP affirmed. USAA's briefs no longer claim its security interest was perfected on September 15, 2005; hence, USAA has waived that argument on appeal.

§ 547(b). Thacker moved for summary judgment, which the bankruptcy court granted.[7]

On August 10, 2007, the bankruptcy court held the transfer was avoidable. The bankruptcy court concluded that cancelling the security interest or transferring it to the trustee was an insufficient remedy. Rather, the court concluded it must award the estate the value of the security interest at the time of the August 30, 2005 purchase of the car—the date the Taylors transferred the security interest in the car to USAA. To that end, the bankruptcy court issued judgment against USAA for $18,020, plus interest—a new $18,020 *additional* to the $18,020 which USAA had *already* loaned the Taylors—and graciously allowed USAA to file an unsecured debtor's claim for this second $18,020 loan plus interest, once USAA paid that new loan's proceeds to the estate.[8] The net result was that (1) the bankruptcy estate was allowed to keep the car and the original loan obligation of $18,020 used to purchase the car; (2) USAA was allowed to keep its valid lien, or security interest, in the car; (3) USAA was ordered to loan the bankruptcy estate another $18,020; and (4) USAA received an unsecured claim against the estate for the fresh loan of $18,020. At the end of the day, USAA was both a secured creditor (against all, including the bankruptcy estate) for one loan of $18,020 (less the payments the Taylors had made) and an unsecured creditor for another, new debt of $18,020.

---

[7]There does not seem to be any explanation for the seventeen month delay between the date when the Taylors filed for bankruptcy and the date when Thacker sued USAA. USAA has not raised any legal contention based on this fact.

[8]The court ordered USAA to pay interest on the $18,020 from November 21, 2005 through the date of entry of the judgment at 4.30% per annum, and at the rate of 4.82% per annum after the date of entry of judgment until the judgment was paid. *See Acequipa, Inc. v. Clinton (In re Acequipa, Inc.)*, 34 F.3d 800, 818-19 (9th Cir. 1994) (holding prejudgment interest was available on the value of property ordered paid by a creditor to a bankruptcy estate).

During proceedings before the bankruptcy court, USAA contended that the correct remedy was simply to cancel the security interest, i.e., to return the transferred property to the estate. The bankruptcy court held that canceling the security interest would not return the estate to the same position it would have been in if the Taylors had not made the transfer to USAA. The value of the security interest had diminished because, first, the Taylors had made monthly payments on the auto loan and, second, the car had depreciated in value between the date of the purchase and the date of summary judgment.[9] The bankruptcy court rejected USAA's proposed remedy of simply avoiding the security interest because that remedy would leave USAA with a windfall in the amount of the payments the Taylors had made since purchasing the car. In granting judgment for the trustee, the bankruptcy court found the value of the security interest at the time of the transfer was the full value of the secured loan. The bankruptcy court authorized the following remedy:

> JUDGMENT is entered in favor of plaintiff Don Thacker and against defendant USAA Federal Savings Bank for the principal sum of $18,020.00, together with interest thereon from November 21, 2005 through the date of entry of this judgment at the rate of 4.30% per annum, and after the date of entry of judgment at the rate of 4.82% per annum, until paid, and execution shall issue therefor.

*Thacker v. USAA Federal Savings Bank (In re Taylors)* No. 07-04025-PBS (Bankr. W.D. Wash. Aug. 10, 2007). USAA was also entitled under the judgment to file an unsecured claim against the estate for the amount of judgment. USAA does not dispute the calculation of interest payments on the principal sum.

---

[9]On July 2, 2007, the Kelly Blue Book value of the car was between $14,240 (trade-in) and $15,895 (private party). As of the date of Thacker's Motion for Summary Judgment, the Taylors still possessed the car.

The Bankruptcy Appellate Panel ("BAP") affirmed. *USAA Federal Savings Bank v. Thacker (In re Taylors)*, 390 B.R. 654 (B.A.P. 9th Cir. 2008).

## II. Standard of Review

This court reviews the decision of the BAP de novo. *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 876 (9th Cir. 2008). We review the bankruptcy court's decision for abuse of discretion: "The bankruptcy court's conclusions of law are reviewed de novo, and its findings of fact are reviewed for clear error." *Id.* In applying our abuse of discretion test, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009). If the bankruptcy court identified the correct legal rule, we then determine whether its "application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted). If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. *Id.*

## III. Legal Analysis

### A. Avoidance of the Lien

The bankruptcy court correctly held Thacker could avoid the transfer of the security interest under 11 U.S.C. § 547(b).[10] That section is designed to prohibit insolvent debtors, on the eve of filing for bankruptcy, from paying off their debts held by "preferred" creditors—those creditors whom the soon-to-

---

[10]This case was filed before the October 17, 2005 effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

be bankrupts wish to favor. Indeed, on appeal, USAA does not dispute the security interest was properly avoided as a preferential transfer under § 547. Nevertheless, it is useful to understand why the bankruptcy court found the transfer of the security interest (hereinafter "the transfer") was avoidable. Pursuant to 11 U.S.C. § 547(b):

> The trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
>   (A) on or within 90 days before the date of the filing of the petition; or
>
>   (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
>   (A) the case were a case under chapter 7 of this title;
>
>   (B) the transfer had not been made; and
>
>   (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

[1] The trustee proved the transfer met all the requirements necessary for the bankruptcy court to avoid the preferential

transfer. The Taylors transferred the security interest to USAA. *See* § 547(b)(1). The transfer was in exchange for the $18,020 loan USAA made to the Taylors on August 30, 2005. *See* § 547(b)(2). Under section 547(f), debtors are presumed insolvent for the 90 days prior to filing for bankruptcy. *See* § 547(b)(3). The date of the transfer is the date the security interest was perfected, September 20, 2005, only 8 days before the Taylors filed for bankruptcy on September 28, 2005. *See* § 547(b)(4).

**[2]** As a result of the transfer, USAA received more than it would have received had the transfer not been made. *See* § 547(b)(5). When the transfer was made, USAA's loan became secured by the car. When the Taylors declared bankruptcy, USAA was entitled to repossess the car if the Taylors defaulted on the loan. The car was valued at $19,500 at purchase and between $14,240 and $15,895 when Thacker filed the adversary action on behalf of the estate.

**[3]** If the transfer had not occurred, and the Taylors had defaulted on the loan when they filed for bankruptcy, then USAA would be entitled only to file a claim for the value of the unpaid principal on the loan as an unsecured creditor. In that situation, the debtors would be less likely to make their monthly payments to USAA because unlike a lender with a perfected security interest who usually has the legal right to repossess the encumbered property upon default of the loan payments, an unsecured creditor must simply hope for repayment from the bankrupt estate. Because the transfer met all the requirements of § 547(b), the bankruptcy court correctly held the transfer avoidable.

### B.   The Transfer of the Security Interest, not the Loan, was Avoidable under § 547

**[4]** When a creditor perfects a security interest for new value after the 20-day period provided for in § 547(c) and the debtors declare bankruptcy within 90 days, the trustee may

avoid the transfer of the security interest, but not the underlying loan. For the purpose of bankruptcy law, courts treat the perfection of the security interest after twenty days as a new transfer that does not fall within any of the exceptions to 11 U.S.C. § 547.

**[5]** The Supreme Court has affirmed this approach. In *Fidelity Financial Services, Inc. v. Fink*, 522 U.S. 211 (1998), *aff'g In re Beasley*, 183 B.R. 857, 862 (Bankr. W.D. Mo. 1995), the debtor agreed to a purchase-money security interest with a creditor to purchase a car. There, as here, the lender perfected the security interest 21 days after the debtor took possession of the car and raised the enabling loan defense in response to the trustee's adversarial action to avoid the transfer. *Id.* at 213. The Court held state law grace periods for creditors to perfect security interests were inapplicable in the bankruptcy context. *Id.* at 216-17. The creditor could not invoke the enabling loan defense when it perfected its security interest more than 20 days after the debtor took possession, even if state law created a grace period for the perfection of a security interest. *Id.* As relevant here, the Court affirmed the bankruptcy court's order setting aside the lien only. *See In re Beasley*, 183 B.R. at 862. Despite avoiding the transfer of the security interest, that bankruptcy court did not set aside the underlying loan for the purchase of the car. *Accord Rodriguez v. Drive Financial Services, LP (In re Bremer)*, 408 B.R. 355, 359 (10th Cir. BAP 2009).

**[6]** This approach seems well accepted by bankruptcy courts. For example, in *Kelley v. General Motors Acceptance Corp. (In re Farmer)*, 209 B.R. 1022 (Bankr. M.D. Ga. 1997), the debtors executed a purchase-money security interest to purchase a Pontiac Grand Am. The creditor did not perfect its lien within 20 days of the debtors taking possession of the car. On appeal, the parties agreed the security interest was avoidable as a preference, but disputed the correct remedy. *See* 209 B.R. at 1024. The court noted: "The 'transfer' at issue in this case was a lien, not the vehicle." *Id.* The court ordered the

security interest declared void and for the creditor to return the amount of the payments it received from the debtors. *Id.* at 1026. That is what should have happened here.

### C.   However, the bankruptcy court did not abuse its discretion in holding it could award the value of the security interest.

**[7]** Section 550(a) gives a trustee two remedy options when the court avoids a preferential transfer. That section states:

> [T]o the extent that a transfer is avoided under section . . . 547 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from — (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made; or (2) any immediate or mediate transferee of such initial transferee.

Thus, the bankruptcy court may award the trustee (1) the actual property, or (2) the value of the property. The statute does not explain when a court should award the trustee recovery of the actual property and when it should, in the alternative, award the trustee recovery of the value of the property. The statute states only that a court must issue a "single satisfaction." 11 U.S.C. § 550(d). Bankruptcy courts have discretion whether to award recovery under § 550, even when the transferred property is a lien. *E.g., Rodriguez v. Drive Financial Services, LP (In re Bremer)*, 408 B.R. 355, 359 (B.A.P. 10th Cir. 2009). If a bankruptcy court permits the trustee recovery, the court has discretion whether to award the trustee recovery of the property transferred or the value of the property transferred. *Id.*

USAA contends the language "to the extent a transfer is avoided," in § 550 limits the bankruptcy court's choice of

remedy to simply canceling the security interest. Ordinarily, when a trustee successfully brings an adverse action against a creditor, 11 U.S.C. § 551 provides the default remedy. That section states:

> Any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate.

A trustee, however, has the discretion to seek an alternative remedy under § 550 ("the trustee *may* recover . . .") (emphasis added). *See In re Bremer*, 408 B.R. at 358-59 ("Preservation is automatic, while recovery is not. Recovery is necessary only when the remedy of avoidance, and therefore of preservation, is inadequate."). USAA's interpretation of the statute would render the majority of § 550 meaningless surplusage in the context of a non-possessory lien or security interest. We therefore reject USAA's contention that, because the security interest was void *ab initio*, the bankruptcy court lacked discretion to award recovery under § 550. The security interest was not void *ab initio* once the bankruptcy court authorized the estate to recover the value of the security interest under § 550.

**[8]** The next question is whether the bankruptcy court abused its discretion when it decided to award the estate the *value* of the security interest, instead of the security interest (the property transferred) *itself*. We hold it did not. The purpose of § 550(a) is "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *E.g.*, *Aalfs v. Wirum (In re Straightline Invs., Inc.)*, 525 F.3d 870, 883 (9th Cir. 2008) (internal citations omitted). A bankruptcy court ordinarily determines the value of the property to be the value at the time of the transfer, but has discretion on how to value the property so as to put the estate in its pre-transfer position. *Joseph v. Madray (In re Brun)*, 360 B.R. 669, 674 (Bankr. C.D. Cal. 2007) ("Typically, courts equate

'value' with the fair market value of the subject property at the time of the transfer."). In this case, the bankruptcy court held correctly that awarding the estate the *value* of the security interest would more closely restore the estate to its pre-transfer position than simply avoiding the transfer.

Addressing this exact issue, the BAP held a bankruptcy court had discretion to award the property or the value of the property in order to avoid a lien. *In re Bremer*, 408 B.R. at 358-59. *In re Bremer* involved two consolidated cases whose facts were indistinguishable from the present case. The debtors loaned auto buyers the purchase price of their cars through purchase-money security interests from the purchasers. The security interests were avoidable under § 547 and the trustee brought adversarial actions to avoid the transfers of the securities interests. *Id.* at 358. The bankruptcy court avoided the transfers but held that the correct remedy was to return the property—the security interest—to the estate. *Id.*

The BAP affirmed on the ground that the bankruptcy courts' remedy, to return the security interest, was not an abuse of the courts' discretion. *Id.* at 361. The BAP did not hold the only available remedy was to avoid the security interest. *Id.* at 360 ("[W]e decline to hold that § 550(a) relief is unavailable in every lien avoidance case."). Instead, the BAP noted, "there are circumstances in which avoiding and preserving a lien under § 551 may not suffice to put the estate back to its pre-petition position . . . and awarding the trustee the value of the vehicle was the proper § 550 remedy." *Id.*

The BAP went on to identify two possible situations where avoiding a lien is an insufficient remedy and recovery of the value of the security interest is necessary to restore the estate to its pre-transfer position. First, "[w]here the property is unrecoverable or its value diminished by conversion or depreciation, courts will permit the recovery of value." *Id.* And second, "when the value is readily determinable and a monetary award would work a savings for the estate." *Id.* In contrast,

"[w]hen the record is devoid of evidence on the property's market value or when conflicting evidence exists on the value of the transferred property, courts have ordered the property to be returned." *Id.*

Here, the bankruptcy court held the value of the security interest was diminished by depreciation and payments the Taylors had made by the time the court acted on the trustee's motion to avoid the security interest. Hence, the bankruptcy court awarded the value of the security interest to restore the estate to the position in which it would have been had the transfer of the security interest to USAA not been made. The bankruptcy court was attempting to correct for the difference between the value of the security interest at the time of the transfer (September 20, 2005) and the value of the security interest at the time of judgment (August 10, 2007). We agree that the value of a security interest is determined in part by the value of the secured asset, in this case the value of the Taylors' car. Hence, the depreciation of the value of the car lowered the value of the security interest. Furthermore, the value of the security interest is determined in part by the outstanding balance of the Taylors' debt. As the Taylors made payments to reduce their debt, the value of the security interest diminished.

**[9]** The error here stems from the bankruptcy court's determination of the value of the security interest. The bankruptcy court attempted to make up for the diminution of the security interest's value—for payments made and depreciation in the value of the car—in its remedy.

We understand the bankruptcy court's reasoning to be as follows: If USAA had not received a valid security interest in the Camry when the Taylors purchased it, the Taylors could have acquired another loan, e.g. from Bank X, for an amount equal to the value of the original loan in exchange for transferring the security interest in the car to Bank X. Thus, when the Taylors filed for bankruptcy, the estate would have had

the automobile, an unsecured debt of $18,020 owed to USAA, and a secured debt of $18,020 owed to Bank X.[11] The estate would have had the automobile, an unsecured debt of $18,020 owed to USAA, and a secured debt of $18,020 owed to Bank X. The bankruptcy court tried to recreate this alternative scenario through its judgment, except instead of USAA holding the unsecured debt and another bank holding the secured debt, USAA was to hold both.

The bankruptcy court's premise, which the BAP seems to have accepted without discussion, 390 B.R. at 665 n.13, that upon the purchase of the Camry, the Taylors could get a loan and that such a loan would be for $18,020, is not supported by the evidence. There is no evidence in the record to support the Trustee's claim that the security interest was worth a loan of $18,020, which would make it more likely than not that Bank X would loan that amount on the Camry. Additionally, there is no evidence that a second bank would have loaned the Taylors $18,020 in exchange for a secured interest in the Camry when any bank with access to honest financial documents would have seen that the Taylors had just incurred an $18,020 debt to USAA. Furthermore, we question the estate's claims that the car was worth the full $18,020 when, 21 days after the Taylors took possession, USAA perfected its security interest. The estate's motion does not contain any support or explanation why the Camry's value would not have started to depreciate the moment the Taylors drove their vehicle off the dealer's lot.

**[10]** For these reasons, we hold the bankruptcy court abused its discretion. The bankruptcy court's finding that (1)

---

[11]This raises the question why the bankruptcy court thought the Taylors could only get the value of the original loan, $18,020, and not the full purchase price of the car, $19,500. There was no evidence whether market conditions in 2005 would have provided for a fully-financed, no down payment purchase. The bankruptcy court assumed the Bank X loan would have allowed Bank X properly to perfect its security interest.

another bank would loan $18,020 collateralized by a security interest, and (2) the value of the security interest was equal to an unsecured loan of $18,020 was "without support in inferences that may be drawn from the facts in the record." *Hinkson*, 585 F.3d at 1262 (quotation marks omitted).

Ordinarily, where a trial court bases its judgment on a clearly erroneous finding of fact, we remand for further findings consistent with our opinion. In this case, however, no remand is necessary. It is well established that in deciding to award an estate the value of property, a bankruptcy court must decide "whether there is conflicting evidence as to the value of the property and whether the value of the property is readily determinable." 5 *Collier on Bankruptcy* ¶ 550.02[3][a], at 550-9-10 (15th ed. re 2008).

Where the value of the property cannot be easily or readily determined—as is the case here—the correct remedy is to return the property, not award an estimate of the value of the property. *Id.*; *accord In re Bremer*, 408 B.R. at 360. For example, in *In re McLaughlin*, 183 B.R. 171 (Bankr. W.D. Wis. 1995), the bankruptcy court avoided the transfer of a security interest in a mobile home because the security interest was not perfected within the time specified under § 547(c). The bankruptcy court held the trustee could not recover the value of the property because the value was not readily determined. 183 B.R. at 177 ("if the market value of the property can be readily determined and would work a savings for the estate, the trustee may recover value rather than the property."). The court held the value of the lien was related to the market price of the mobile home, but did not specify how. *Id.* Nevertheless, because the value of the mobile home one month after purchase was not necessarily the same as the purchase price, the bankruptcy court declined to award the trustee the value of the property. *Id.* Here twenty-one days elapsed between the day the Taylors took possession of the Camry and when they transferred the security interest to USAA, but we see no reason why a nine day difference would change the

fact that the value of the security interest was not readily ascertainable.

**[11]** We find the value of the security interest at the time of the filing of the bankruptcy petition is not readily ascertainable from this record. Therefore, the only available remedy is to return to the estate the property, i.e., the security interest, and not the value of the property.[12]

The only remaining wrinkle is what to do with the payments made to USAA. The record does not include a clear description of the schedule of payments to USAA. Some, possibly all, of the payments came from the Taylors' postpetition exempt income. We do not see any reason to return those payments to the Taylors. The parties, however, have not addressed this issue so we remand to the bankruptcy court to address the payment issue in the first instance.

Some of the payments, however, may have been paid by the estate, either following the Taylors' declaration of bankruptcy, or, by the Taylors during the 90 days preceding their declaration. Any such payments must be returned by USAA to the estate, either as postpetition transactions under 11 U.S.C. § 549, or, as a prepetition preferential transaction under 11 U.S.C. § 547. We remand to the bankruptcy court to determine whether the estate made any pre- or post-petition transfers to USAA in payment of the loan and, if so, whether those payments should be returned to the estate.

We note in passing that Thacker's objection to canceling the security interest, on the grounds that if USAA returned the monthly payments made by the Taylors and then had an unsecured claim for the original $18,020, the calculation of prejudgment interest on the monthly payments would prove diffi-

---

[12]We do not reach the question whether "value" as used in § 550 may extend beyond a simple money judgment to include injunction-style remedies such as loans.

cult or complicated, lacks merit. The parties should have records of the timing of each monthly payment, and they can calculate the same 4.30% per year simple interest, as awarded by the bankruptcy court in its first remedy, on each recoverable monthly payment until USAA has satisfied the judgment.[13]

## IV.   Conclusion

[12] The Bankruptcy Appellate Panel's decision was correct to the extent it held a bankruptcy court had discretion to award a trustee the value of a security interest that was avoided under § 547. The bankruptcy court, however, clearly erred in determining the correct value of the security interest. We reverse with instructions for the bankruptcy court to avoid the security interest and to determine in the first instance how to handle the recovery of the monthly payments.

**REVERSED AND REMANDED.**

---

[13]The bankruptcy court was correct to award prejudgment interest. *See Acequipa, Inc. v. Clinton (In re Acequipa, Inc.)*, 34 F.3d 800, 818-19 (9th Cir. 1994). The same rate of 4.30% per year simple interest should be used.